OPINION
{¶ 1} Defendant, George Pillow, appeals from his conviction and sentence for robbery and burglary.
 {¶ 2} On the evening of March 20, 2007, while he was working at the East End Drive Thru located on Main Street in Xenia, Lionel Daniels walked to the back of the drive-thru and *Page 2 
out into the parking lot. Daniels heard a noise, and he walked back inside. As he walked toward the office, Daniels observed a shadow moving out of the office area, which, as he got closer, Daniels saw was Defendant, George Pillow. Daniels also saw that money was missing from a cash register drawer and he suspected that Defendant had taken the money.
 {¶ 3} Daniels confronted Defendant and demanded that Defendant return the money. Defendant said he did not know what money Daniels was talking about. When Daniels tried to prevent Defendant from leaving, the two men scuffled. Defendant was able to extract himself from Daniels' grasp and fled on foot. Daniels then called police. Daniels described the suspect he had encountered as a black male who wore dark clothing and carried a book bag.
 {¶ 4} Officer Shaw arrived at the East End Drive Thru and immediately began searching the area for the suspect. Five minutes after he was dispatched, Officer Shaw observed Defendant, who matched the description of the suspect, in the two hundred block of East Third Street, two blocks from the East End Drive Thru. When Officer Shaw asked to speak with him, Defendant immediately blurted out that he did not do it, that the guy who did had run East on Third Street. Officer Shaw transported Defendant back to the East End Drive Thru *Page 3 
twelve minutes after having been dispatched to the scene. Daniels positively identified Defendant as the person who took the money and with whom Daniels had struggled.
 {¶ 5} Defendant was initially indicted in Case. No. 2007-CR-0224 on one count of robbery. Defendant filed a motion to suppress his identification and his statements to police. Following a hearing, the trial court overruled Defendant's motion to suppress.
 {¶ 6} Defendant was subsequently reindicted in Case No. 2007-CR-0446 on one count of robbery, R.C. 2911.02(A)(3), and one count of burglary, R.C.2911.12(A)(3). The indictment in Case No. 2007-CR-0224 was dismissed. Defendant was found guilty of both robbery and burglary following a jury trial. The trial court sentenced Defendant to consecutive prison terms of four years on each count, for a total sentence of eight years.
 {¶ 7} On January 9, 2008, we granted Defendant leave to file a delayed appeal.
FIRST ASSIGNMENT OF ERROR
 {¶ 8} "APPELLANT'S CONVICTIONS ARE AGAINST THE SUFFICIENCY AND/OR THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 9} A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each *Page 4 
element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. State v. Thompkins, (1997),78 Ohio St.3d 380. The proper test to apply is the one set forth in paragraph two of the Syllabus of State v. Jenks (1991), 61 Ohio St.3d 259:
 {¶ 10} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
 {¶ 11} A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive. State v. Hufnagle (Sept. 6, 1996), Montgomery App. No. 15563. The proper test to apply to that inquiry is the one set forth in State v. Martin (1983),20 Ohio App.3d 172, 175:
 {¶ 12} "[T]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the *Page 5 
credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Accord: State v. Thompkins, supra.
 {¶ 13} In order to find that a manifest miscarriage of justice occurred, an appellate court must conclude that a guilty verdict is "against," that is, contrary to, the manifest weight of the evidence presented. See, State v. McDaniel (May 1, 1998), Montgomery App. No. 16221. The fact that the evidence is subject to different interpretations on the matter of guilt or innocence does not rise to that level.
 {¶ 14} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts primarily to resolve.State v. DeHass (1967), 10 Ohio St.2d 230. In State v. Lawson (August 22, 1997), Montgomery App. No. 16288, we explained:
 {¶ 15} "[B]ecause the factfinder . . . has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision *Page 6 
whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness."
 {¶ 16} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict. State v. Bradley (Oct. 24, 1997), Champaign App. No. 97-CA-03.
The Robbery Conviction
 {¶ 17} Defendant was found guilty of violating R.C. 2911.02(A)(3), which provides:
 {¶ 18} "(A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:
 {¶ 19} "* * *
 {¶ 20} "(3) Use or threaten the immediate use of force against another."
 {¶ 21} "Force" is defined in R.C. 2901.01(A) as any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing.
 {¶ 22} Defendant argues that his conviction for robbery is not supported by legally sufficient evidence and is against the manifest weight of the evidence because the evidence the *Page 7 
State presented fails to prove that Defendant used an amount of force necessary to elevate a theft to a robbery offense. The type of force necessary to distinguish the offenses of theft and robbery is that which poses actual or potential harm to a person. State v. Furlow (1992),80 Ohio App.3d 146. Defendant relies upon this court's decision inFurlow, where we held that snatching a wallet and money from the victim's firmer-than-usual grasp did not constitute the degree of force necessary to convict for robbery.
 {¶ 23} The facts in this case easily distinguish it fromFurlow. In describing his attempt to prevent Defendant from leaving the drive-thru and the physical altercation with Defendant that ensued, Lionel Daniels used the terms "tussle" and "struggle." Daniels testified that Defendant was trying to physically move him out of the way so he could leave, and Daniels was trying to make Defendant stay. Defendant and Daniels were bumping into each other, grabbing each other, and had their hands on each other. Defendant eventually got away when Daniels was unable to restrain him any longer. This altercation between Defendant and Daniels was physical in nature and involved a use of force that posed a risk of actual or potential harm to persons. That is sufficient to elevate what would otherwise be a theft offense to robbery. State v. *Page 8 Wolford (Dec. 28, 2000), Franklin App. No. 00AP-378; Furlow.
 {¶ 24} Viewing the totality of the evidence in this case, including the testimony of the victim, in a light most favorable to the State, as we must, a rational trier of facts could find all of the essential elements of robbery proven beyond a reasonable doubt. Defendant's conviction for robbery is supported by legally sufficient evidence.
 {¶ 25} Further, after reviewing the record as a whole, we cannot say that the evidence concerning the force Defendant used weighs heavily against a conviction, that the jury lost its way in choosing to believe the State's witnesses, or that a manifest miscarriage of justice occurred. Therefore, we cannot find that Defendant's conviction for robbery is against the manifest weight of the evidence.
The Burglary Conviction
 {¶ 26} Defendant was also found guilty of violating R.C. 2911.12(A)(3), which provides:
 {¶ 27} "(A) No person, by force, stealth, or deception, shall do any of the following:
 {¶ 28} "(3) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, with purpose to commit in the structure or separately secured or separately occupied portion of the *Page 9 
structure any criminal offense."
 {¶ 29} Trespass is defined in R.C. 2911.21:
 {¶ 30} "(A) No person, without privilege to do so, shall do any of the following:
 {¶ 31} "(1) Knowingly enter or remain on the land or premises of another;
 {¶ 32} "(2) Knowingly enter or remain on the land or premises of another, the use of which is lawfully restricted to certain persons, purposes, modes, or hours, when the offender knows the offender is in violation of any such restriction or is reckless in that regard;
 {¶ 33} "(3) Recklessly enter or remain on the land or premises of another, as to which notice against unauthorized access or presence is given by actual communication to the offender, or in a manner prescribed by law, or by posting in a manner reasonably calculated to come to the attention of potential intruders, or by fencing or other enclosure manifestly designed to restrict access;
 {¶ 34} "(4) Being on the land or premises of another, negligently fail or refuse to leave upon being notified by signage posted in a conspicuous place or otherwise being notified to do so by the owner or occupant, or the agent or servant of either." *Page 10 
 {¶ 35} Defendant argues that his conviction for burglary is not supported by legally sufficient evidence and is against the manifest weight of the evidence because the evidence the State presented fails to prove that Defendant committed a trespass; that is, that Defendant knew or should have known that by entering a certain area of the drive-thru he was in violation of rules limiting or restricting access to that particular area to certain persons, such as employees. State v.Cooper, 168 Ohio App.3d 378, 2006-Ohio-4004.
 {¶ 36} Defendant argues that he could not have trespassed when he entered the drive-thru itself because it was open to the public and therefore his entry was privileged We agree. Cooper. We also agree that because Defendant's entry into the drive-thru was privileged, his commission of a theft offense once inside cannot convert his privileged entry into an unlawful trespass. Id. A shoplifter who enters a store lawfully is a thief, not a burglar. State v. Barksdale (1983),2 Ohio St.2d 126. However, all of that is beside the point. It was Defendant's conduct in entering the office area of the drive-thru where the cash register is located that constitutes the trespass in this case. As to that, Defendant argues that the owner of the drive-thru and its employees failed to communicate to business invitees the limitations or *Page 11 
restrictions on entering certain areas of the drive-thru not open to the public because no signs were posted limiting access.
 {¶ 37} In Cooper, at ¶ 15, we observed:
 {¶ 38} "R.C. 2911.12(A)(3) prohibits `[t]respass * * * in a separately secured or separately occupied portion of an occupied structure,' even when entry into the structure itself is lawful. In that circumstance, the state must prove that the defendant knew or should have known that by entering that portion of the occupied structure, he was in violation of rules limiting or prohibiting his access to or use of the space concerned. Kilgore. The duty to communicate such limitations is on the owner or occupier of the land or building. State v. McMechan (1988),48 Ohio App.3d 261, 549 N.E.2d 211."
 {¶ 39} Adequate warnings of premises use restrictions can be communicated actually by signs, or constructively through the use of physical barriers that limit access. McMechan. The evidence demonstrates that the only way to enter the office/storage area where the cash register is located and Defendant was seen was either through a door that was closed or by jumping over a wall/barrier that separates the office area not open to the public from the public areas of the *Page 12 
drive-thru through which Defendant entered. Defendant was not unfamiliar with the layout of this drive-thru, having made purchases there several times in the past. Moreover, during the jury view the jury was able to see for themselves the wall that divides the public areas from the office/storage area to which access is restricted.
 {¶ 40} Reasonable minds could find that the closed door and the barrier/wall separating the office/storage area from the public areas of the drive-thru were sufficient to put Defendant on notice that by entering that area he was in violation of a restriction limiting access to it. As the owner of the drive-thru, Daniel Morah, put it, "everybody that comes in there knows they're not to go beyond that point." Therefore, when Defendant entered that area he acted without privilege to enter that separately secured portion of the occupied structure, and his conduct was therefore a "trespass." Defendant's conviction for burglary is supported by legally sufficient evidence and is not against the manifest weight of the evidence.
 {¶ 41} Finally, Defendant argues that his convictions are not supported by legally sufficient evidence and are against the manifest weight of the evidence because his defense theory, that this was not a robbery but a drug transaction *Page 13 
involving employee Daniels, is supported by Daniels' conduct that was captured on the drive-thru's video surveillance cameras.
 {¶ 42} When Daniels walked to the back of the drive-thru and out into the parking lot, he left the cash register drawer open. Immediately after this incident occurred, Daniels is depicted on the videotape bending down near some soda pop cases and then entering the office carrying a white object about the size of a bar of soap. Daniels testified that he did not know what he was carrying, and he denied placing drugs in or around the soda pop cases.
 {¶ 43} There is no probative evidence that supports Defendant's theory that this was a drug transaction, only defense counsel's speculation and argument about Daniels' behavior, which the jury rejected. Daniels testified that he does not use drugs and was not buying drugs from Defendant, and when asked if he put any drugs under the drawer in the cash register, Daniels responded, "and then call the police? No sir, I sure didn't."
 {¶ 44} The credibility of the witnesses and the weight to be given to their testimony were matters for the trier of facts, the jury here, primarily to resolve. DeHass. The jury did not lose its way in this case simply because it chose to *Page 14 
believe the State's witnesses, which it had a right to do. Defendant's convictions are supported by legally sufficient evidence and are not against the manifest weight of the evidence.
 {¶ 45} Defendant's first assignment of error is overruled.
SECOND ASSIGNMENT OF ERROR
 {¶ 46} "APPELLANT WAS DEPRIVED OF HIS RIGHT TO A FAIR AND IMPARTIAL JURY AND A FAIR TRIAL BASED ON PROSECUTORIAL MISCONDUCT."
 {¶ 47} In analyzing claims of prosecutorial misconduct, the test is "whether remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused." State v. Jones,90 Ohio St.3d 403, 420, 2000-Ohio-187, citing State v. Smith (1984),14 Ohio St.3d 13, 14. "The touchstone of analysis `is the fairness of the trial, not the culpability of the prosecutor.'" Id., quoting Smith v.Phillips (1982), 455 U.S. 209, 219, 102 S.Ct. 940, 947, 71 L.Ed.2d 78. Where it is clear beyond a reasonable doubt that a jury would have found the defendant guilty even absent the alleged misconduct, the defendant has not been prejudiced and his conviction will not be reversed. SeeState v. Loza (1994), 71 Ohio St.3d 61, 78, 1994-Ohio-409. In reviewing allegations of prosecutorial misconduct, we review the alleged *Page 15 
wrongful conduct in the context of the entire trial. Darden v.Wainwright (1986), 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144.
 {¶ 48} Defendant failed to object at trial to any of the comments by the prosecutor about which he now complains. Accordingly, Defendant has waived all but plain error. State v. Cohen, Greene App. No. 2001CA8, 2002-Ohio-914; State v. Jones (2001), 91 Ohio St.3d 335, 352. Plain error does not exist unless, but for the improper comments of the prosecutor, the outcome of Defendant's trial would clearly have been different; that is, he would not have been convicted. Coben.
 {¶ 49} Defendant contends that during voir dire the prosecutor characterized robbers and burglars in an inflammatory manner that encouraged jurors to form a mental image of a sinister figure, and that was prejudicial. For example, the prosecutor stated that when he thinks of a robber he thinks of a guy with a ski mask on, one who has a gun and is about to enter a bank. The prosecutor then asked the jurors that if the law in Ohio says that a person can be guilty of robbery, even if there is no weapon involved or the victim does not get hurt, whether any of the jurors would have a problem with that? The prosecutor also stated that his own idea of a burglary is that it's at night, the culprit wears *Page 16 
all black, and is going to break into your house. The prosecutor then asked the jurors if the law in Ohio says a person can be guilty of burglary even if there is no house involved, whether that presents a problem for anyone?
 {¶ 50} These remarks were not improper. An examination of the prosecutor's remarks in the context of the entire voir dire reveals that the prosecutor was trying to convey to the jurors that any preconceived ideas they might have about how certain crimes take place may not correspond to the way the offenses in this case were committed. The prosecutor was making sure the jurors understood that under Ohio law a person can commit a robbery of a store without a gun and a ski mask, and that someone can commit a burglary without breaking into someone's home, and that they must follow the law and not substitute their ideas of what the law should be. Such comments were neither inaccurate nor improper. Defendant even concedes in his brief that the prosecutor's comment that robbery can be committed even if the victim does not get hurt is a correct statement of law because the force required for that offense need only pose potential harm. Furlow, supra. No error, much less plain error, has been demonstrated.
 {¶ 51} Defendant also complains that the prosecutor provided the jury with a faulty definition of reasonable doubt *Page 17 
during voir dire when he remarked:
 {¶ 52} "A reasonable doubt is not any doubt. It is not all doubt. It is a reasonable doubt, and some folks like to analogize it to sports, and I've heard some attorneys analogize it to a cloak. He's covered by a cloak of innocence. A reasonable doubt is, I have to take that cloak off. But I like to think of it as a brick wall. That presumption of innocence that I described, Mr. Pillow is standing behind it, and he is wholly protected by that presumption. My responsibility, the State's responsibility is to knock those bricks down. Reasonable doubt does not mean that I have to knock all the bricks down, but I have to knock enough bricks down so that you can clearly see who is standing on the other side of that wall. Does anybody have a fundamental disagreement or misunderstanding about that?" (Voir Dire T. 32-33).
 {¶ 53} Once again, an examination of the prosecutor's remarks in their proper context reveals that they were not improper. The prosecutor specifically told the jurors that they would receive the definition of reasonable doubt from the trial judge. The prosecutor was not defining reasonable doubt but rather using an analogy in an attempt to show the jury the difference between proof beyond any/all doubt and proof beyond *Page 18 
a reasonable doubt. The remarks were not improper. Furthermore, because the trial court properly instructed the jury on the meaning of reasonable doubt, Defendant cannot show that but for the prosecutor's brick wall analogy, he would not have been convicted. Plain error has not been demonstrated.
 {¶ 54} A trend has developed in recent years in the defense bar to claim that prosecutorial misconduct occurred when no objection on those grounds was made in the trial court, perhaps in the hope that the contention might overcome the prospect of waiver. That should be avoided. The plain error standard of review nevertheless applies, and in order to reverse we must find that the defendant's right to a fair trial was denied as a result. That is a high hurdle. Furthermore, even though the culpability of the prosecutor is not determinative of a misconduct claim, counsel should avoid impugning the integrity of another officer of the court through claims that are insubstantial and merely tactical. We hope for a better day.
 {¶ 55} Defendant's second assignment of error is overruled.
THIRD ASSIGNMENT OF ERROR
 {¶ 56} "APPELLANT WAS DEPRIVED OF A FAIR AND IMPARTIAL JURY, A FAIR TRIAL, AND EFFECTIVE ASSISTANCE OF COUNSEL THROUGH DEFENSE COUNSEL'S ERRORS." *Page 19 
 {¶ 57} Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must demonstrate that were it not for counsel's errors, the result of the trial would have been different. Id.; State v. Bradley (1989),42 Ohio St.3d 136.
Failure to Object to Prosecutor's Comments During Voir Dire
 {¶ 58} Defendant argues that his trial counsel performed deficiently by failing to object to the inflammatory remarks made by the prosecutor during voir dire discussed above. However, because we concluded in the previous assignment of error that the prosecutor's remarks were not improper, defense counsel did not perform in a deficient manner by failing to object to them.
Failure to Challenge the Initial Stop and Detention of Defendant
 {¶ 59} Defendant argues that his counsel performed in a deficient manner by failing to include in Defendant's motion to suppress aFourth Amendment challenge to the initial *Page 20 
investigatory stop and detention of Defendant by Officer Shaw. Trial counsel's failure to file a motion to suppress constitutes ineffective assistance of counsel only if the failure to file the motion caused Defendant prejudice; that is, when there is a reasonable probability that had the motion to suppress been filed, it would have been granted.State v. Jackson, Cuyahoga App. No. 86542, 2006-Ohio-1938; State v.Henry (July 9, 1999), Montgomery App. No. 17261.
 {¶ 60} Previous counsel for Defendant did file a motion to suppress which challenged Defendant's statements to police and the pretrial identification of Defendant by Lionel Daniels. The trial court overruled Defendant's motion to suppress that evidence. Thereafter, present trial counsel was appointed to represent Defendant.
 {¶ 61} The record fails to demonstrate any legitimate grounds upon which to claim that the initial investigatory stop and detention of Defendant by Officer Shaw was not supported by a reasonable, articulable suspicion of criminal activity, which avoids any violation of Defendant's Fourth Amendment rights. Terry v. Ohio (1968), 392 U.S. 1,88 S.Ct. 1868, 20 L.Ed.2d 889. Lionel Daniels described the perpetrator as a black male who wore all dark clothing, including a hoody, and carried a book bag. Within five *Page 21 
minutes after being dispatched to the crime scene, Officer Shaw encountered Defendant in the two hundred block of East Third Street, just two blocks from the East End Drive-Thru where these crimes occurred. Defendant matched the description of the robber Officer Shaw had been given.
 {¶ 62} Officer Shaw was directed to East Third Street by a person whom he encountered at Second and Columbus Streets, who said the suspect had run through several yards over to East Third Street. When Officer Shaw encountered Defendant he asked if Defendant would talk with him for a minute. Defendant immediately blurted out that he did not do it, and that the guy that did it had run East on Third Street. Defendant became very agitated as Officer Shaw continued to talk to him. Within just twelve minutes after being dispatched to the crime scene, Officer Shaw transported Defendant back to the East End Drive-Thru, where Daniels positively identified him as the robber.
 {¶ 63} On this record, we see no reasonable likelihood that a motion to suppress the initial investigatory stop and detention of Defendant by Officer Shaw would have succeeded. Thus, defense counsel's failure to file such a motion does not constitute ineffective assistance of counsel.
Failure to Request Complete Jury Instructions With *Page 22 Respect to Robbery
 {¶ 64} Defendant argues that his counsel performed in a deficient manner by failing to request a jury instruction with respect to the robbery charge, that incorporates into the definition of force the requirement of actual or potential harm to a person. We agree.
 {¶ 65} In State v. Furlow, supra, this court determined that the force element required for robbery requires actual or potential harm to a person. Accord: State v. Carter (1985), 29 Ohio App.3d 148, 149;State v. Ballard (1984), 17 Ohio App.3d 59, 60. In instructing the jury in this case on robbery and the element of force, the trial court defined force as "any violence, compulsion or constraint, physically exerted by any means upon or against a person or thing." That is the definition found in R.C. 2901.01(A) and 4 Ohio Jury Instructions, Section 511.02. However, in Furlow this court stated:
 {¶ 66} "The definition of `force' in R.C. 2901.01(A), without more, does not serve to sufficiently distinguish the offenses of theft and robbery, which carry very different penalties. Concomitantly, a jury instruction that incorporates into the definition of force the requirement of actual or potential harm will provide the jury with a tangible *Page 23 
means of evaluating evidence of force in robbery prosecutions that an instruction based solely on the R.C. 2901.01(A) definition will not provide." Id., at 148-149.
 {¶ 67} We agree with Defendant that his counsel performed deficiently by failing to object to the trial court's jury instruction defining "force" as it pertained to the robbery charge, because that instruction failed to incorporate into the definition of force the requirement of actual or potential harm to a person. However, that deficient performance alone is not sufficient to demonstrate ineffective assistance of counsel. Defendant must also show that he was prejudiced by his counsel's deficient performance. Bradley. In order to demonstrate prejudice, Defendant must show a reasonable probability that but for his counsel's error, the result of the trial would have been different.Id. Defendant cannot make that showing given the evidence in this case.
 {¶ 68} As we discussed in overruling Defendant's first assignment of error, the evidence demonstrates that the physical altercation that occurred when Daniels tried to prevent Defendant from leaving the drive-thru and escaping after committing these offenses was physical in nature and involved a use of force which posed a risk of potential harm to persons. Accordingly, the force involved was sufficient to *Page 24 
elevate what otherwise would have been a theft offense to robbery. Even had defense counsel requested and the trial court given an instruction that incorporates into the definition of force the requirement of actual or potential harm to persons, Defendant would not have been acquitted of robbery because the evidence amply demonstrates the use of such force. Counsel's failure to request such an instruction did not prejudice Defendant, and therefore ineffective assistance of counsel has not been demonstrated.
Failure to Timely Assert Defendant's Speedy Trial Rights
 {¶ 69} Defendant argues that his counsel performed deficiently by failing to timely assert that Defendant's speedy trial rights were violated. Counsel did not seek a speedy trial discharge per R.C. 2945.73
until the trial had commenced. However, Defendant does not explain how his speedy trial rights were violated. Absent that showing, we cannot find that Defendant was prejudiced by his counsel's failure to timely argue a speedy trial violation.
Failure to Object to Speculative Testimony
 {¶ 70} Defendant argues that his counsel performed deficiently by failing to object to the testimony of Daniel Morah, the owner of the drive-thru. According to Defendant, because Morah was not present at the drive-thru at the time *Page 25 
these offenses occurred, his testimony about those events was sheer speculation.
 {¶ 71} Morah was not asked to testify concerning what he saw occur at the drive-thru. Rather, Morah simply testified about what he personally observed when he reviewed the videotapes from the drive-thru's surveillance cameras. As to that matter, Morah clearly had personal knowledge, Evid. R. 602, and defense counsel did not perform deficiently by failing to object to Morah's testimony about what he observed on the surveillance videotapes.
Presenting Inconsistent Alternative Defense Theories
 {¶ 72} Defendant argues that his counsel performed deficiently by presenting alternative defense theories during closing argument that were conflicting. For example, defense counsel first told the jury that the videotape shows Defendant did not take anything from the cash register, and that, instead, he left something in the register drawer which Daniels later retrieved. Subsequently, defense counsel apparently misspoke when he stated that Mr. Pillow (sic) did not get as much money as he wanted, that's why Mr. Pillow (sic) started getting upset. Counsel also suggested that Defendant may have committed a theft offense, but not robbery.
 {¶ 73} An examination of defense counsel's closing argument *Page 26 
in its entirety reveals that Defendant's theory of defense was that his conduct was not a robbery or burglary. Rather, it involved a prearranged drug transaction between Defendant and Daniels that somehow went awry, because Daniels did not get what he wanted. Alternatively, Defendant argued that if his conduct constitutes a theft offense, it was not robbery because no force was used, and that no burglary occurred because there was no force, stealth, or deception used to enter the drive-thru.
 {¶ 74} Arguing that the charged offenses did not occur, and therefore the jury should acquit Defendant or, in the alternative, that if any offenses did occur they were lesser included offenses of those charged, and the jury should therefore find Defendant guilty of those lesser offenses, is a matter of trial strategy and tactics that does not constitute ineffective assistance of counsel, even if that strategy is debatable or questionable. State v. Clayton (1980), 62 Ohio St.2d 45;State v. Malone (Dec. 13, 1989), Montgomery App. No. 10564.
Failure to Object to Inaccurate Jury Instructions
 {¶ 75} Defendant argues that his counsel performed deficiently when he failed to object to the trial court's instruction to the jury that, "if you find the State has *Page 27 
failed to prove beyond a reasonable doubt all the essential elements of burglary, then your verdict must be not guilty as to that offense." Defendant contends that the instruction should have stated that if the State failed to prove any (or any one of) the essential elements of burglary, then the jury's verdict must be not guilty, consistent with the language found in 4 Ohio Jury Instructions Section 413.01.
 {¶ 76} We agree that use of the term "any" or "any one of" is preferable to use of the term "all" in the court's general instruction. However, we do note that Webster's Dictionary defines "all" as an adjective meaning the whole amount, quantity or number, as well as any or any whatever. Likewise, "any" is defined as an adjective meaning one of several, some, every, or all of them. Use of "one" term versus the other in the general conclusion instruction at issue here does not necessarily convey a different meaning.
 {¶ 77} What is crucial is that the trial court's instruction did not relieve the State of its burden of persuasion. The trial court instructed the members of the jury that Defendant must be acquitted unless the State produced evidence which convinced them beyond a reasonable doubt of each and every essential element of the offense charged. The court's instruction reads: *Page 28 
 {¶ 78} "If you find the State has proven beyond a reasonable doubt all the essential elements of the offense of burglary, your verdict must be guilty as charged.
 {¶ 79} "However, if you find the State has failed to prove beyond a reasonable doubt all the essential elements of burglary, then your verdict must be not guilty to that offense . . ."
 {¶ 80} The court's instruction on burglary did not relieve the State of its burden of persuasion and in so doing violate Defendant's due process rights. State v. Gardner, 118 Ohio St.3d 420, 2008-Ohio-2787, at ¶ 36. Rather, the instruction, when viewed as a whole, tells the jury that all the essential elements of burglary must be proven beyond a reasonable doubt or the jury must find Defendant not guilty. That is a correct statement of the law, and Defendant suffered no prejudice as a result of his counsel's failure to object to the court's instruction on burglary. Ineffective assistance of counsel has not been demonstrated.
 {¶ 81} Defendant's third assignment of error is overruled.
FOURTH ASSIGNMENT OF ERROR
 {¶ 82} "THE TRIAL COURT ERRED IN FAILING TO MERGE THE BURGLARY AND ROBBERY COUNTS FOR SENTENCING PURPOSES."
 {¶ 83} Defendant argues that the trial court erred in *Page 29 
failing to merge the robbery charge, R.C. 2911.02(A)(3), and the burglary charge, R.C. 2911.12(A)(3), because they are allied offenses of similar import under R.C. 2941.25.
 {¶ 84} R.C. 2941.25 provides:
 {¶ 85} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 {¶ 86} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import pursuant to R.C. 2941.25(B), or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."
 {¶ 87} In determining whether two or more offenses constitute allied offenses of similar import pursuant to R.C. 2941.25(A), a two step test is employed. In the first step, the statutorily defined elements of the crimes are compared in the abstract, without reference to the facts of the case or Defendant's conduct constituting the offense. State v.Rance, 85 Ohio St.3d 632, 1999-Ohio-291. If the elements of the *Page 30 
offenses correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import and the court must then proceed to the second step. Id. If, however, the elements do not so correspond, the offenses are of dissimilar import and the court's inquiry ends-the multiple convictions are permitted. Id.
 {¶ 88} In the second step, the defendant's particular conduct is reviewed to determine whether the defendant can be convicted of both crimes. If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses. State v. Rance, supra.
 {¶ 89} In State v. Cabrales, 118 Ohio St.3d 54, 2 008-Ohio-1625, at paragraph one of the syllabus, the Ohio Supreme Court recently stated:
 {¶ 90} "In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), courts are required to compare the elements of offenses in the abstract without considering the evidence in the case, but are not required to find an exact alignment of the elements. Instead, if, in comparing the elements of the offenses in the abstract, the offenses are so similar that the commission of one offense *Page 31 
will necessarily result in commission of the other, then the offenses are allied offenses of similar import. (State v. Rance (1999),85 Ohio St.3d 632, 710 N.E.2d 699, clarified.)"
 {¶ 91} Defendant was found guilty of robbery in violation of R.C. 2911.02(A)(3) and burglary in violation of R.C. 2911.12(A)(3). The burglary statute provides:
 {¶ 92} "(A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:
 {¶ 93} "* * *
 {¶ 94} "(3) Use or threaten the immediate use of force against another."
 {¶ 95} The robbery statute provides:
 {¶ 96} "(A) No person, by force, stealth, or deception, shall do any of the following:
 {¶ 97} "* * *
 {¶ 98} "(3) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, with purpose to commit in the structure or separately secured or separately occupied portion of the structure any criminal offense."
 {¶ 99} Comparing the elements of these two offenses in the abstract, without considering the evidence in this case, it is *Page 32 
clear that commission of one of these offenses need not necessarily result in commission of the other. For instance, a person may trespass in an occupied structure with a purpose to commit some criminal offense other than a theft offense. Therefore, a theft offense required for robbery is not an indispensable part of burglary. On the other hand, a person may use or threaten the use of force against another person in attempting or committing a theft offense in a place other than an occupied structure. An occupied structure, which is required for burglary, is therefore not an indispensable element of robbery.State v. Williams (Sept. 22, 2000), Montgomery App. No. 18067. Therefore, burglary and robbery as charged in this case are not allied offenses of similar import. Rather, they are offenses of dissimilar import, and Defendant could be convicted and sentenced for both offenses.
 {¶ 100} Defendant's fourth assignment of error is overruled.
FIFTH ASSIGNMENT OF ERROR
 {¶ 101} "THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S SPEEDY TRIAL MOTION."
 {¶ 102} Defendant argues that the trial court erred in overruling his motion to dismiss for a violation of his speedy trial rights. The State responds that because Defendant did *Page 33 
not move to dismiss based upon a speedy trial violation until late in the trial, after the close of the State's case, Defendant's motion was untimely and his speedy trial challenge has been waived. We agree.
 {¶ 103} In State v. Knight, Greene App. No. 2003CA14, 2004-Ohio-1941, this court stated:
 {¶ 104} "{¶ 5} As we stated in State v. Hart, Montgomery App. No. 19556, 2003-Ohio-5327:
 {¶ 105} "{¶ 6} The right to a speedy trial is guaranteed by theSixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution. In Ohio, R.C. 2945.71 requires the State to bring a felony defendant to trial within two hundred and seventy days of arrest. R.C. 2945.71(C). Each day during which the accused is held in jail in lieu of bail on the pending charge is counted as three pursuant to the triple-count provision of R.C. 2945.71(E).
 {¶ 106} "{¶ 7} Speedy trial provisions must be asserted y a defendant in a timely fashion or they are waived. State v. Bishop, Vinton App. No. 02CA573, ¶ 16, 2003-Ohio-1385. `Thus, in order for an accused to procure his release on the basis of a denial of his right to a speedy trial, he must show *Page 34 
affirmative action on his part to secure a speedy trial.' Partsch v.Haskins (1963), 175 O.S. 139, 140. Additionally, R.C. 2945.73(B) expressly provides that a motion for discharge must be made at or prior to the commencement of trial. If a motion is not made before commencement of trial, there is no provision for relief under the statute. Id. at ¶ 11-12.
 {¶ 107} "{¶ 8} R.C. 2945.73 does not specify the point at which a trial commences, for purposes of that statute. In State v. Wright (July 29, 1976), Cuyahoga App. No. 35040, the Eighth Appellate District concluded that, for purposes of R.C. 2945.73(B), `a criminal trial commences when the parties appear before the court and announce that they are ready to proceed with trial and thereupon a jury trial is waived by the defendant or the parties start to impanel a jury.'Id.; see State v. Kusinko (Mar. 16, 1989), Cuyahoga App No. 55106. TheWright court relied, in part, upon the Supreme Court of Ohio's pronouncement in Palmer v. State (1885), 42 Ohio St. 596, 601-602, that impaneling a jury was part of a trial. The First Appellate District has likewise held that, for purposes of Ohio's speedy trial requirements, a trial commences when voir dire begins. State v. Cook (Apr. 4, 1990), Hamilton App. No. C-890066. Other courts have indicated that a trial has commenced when the jury is impaneled and sworn. State v. Page *Page 35 
(June 25, 1984), Stark App. Nos. CA-6326, CA-6334 (`It is clear that a trial has commenced [for purposes of R.C. 4529.73] when the jury is impaneled and sworn, which was done in this case.'); see also Wagner v.State (1885), 42 Ohio St. 537 (for purposes of supreme court jurisdiction under Rev. Stats. § 7356, `trial' commences, at least, immediately after the jury is sworn; the court found it unnecessary to address, at that time, whether `trial' included the impaneling of a jury).
 {¶ 108} "{¶ 9} We note that the Sixth Circuit has likewise held, for purposes of the federal Speedy Trial Act, 18 U.S. Code § 3161 et seq., that a trial is considered to have begun when the voir dire process begins. United States v. Warren (C.A.6, 1992), 973 F.2d 1304, 1307;United States v. Scaife (C.A.6, 1984), 749 F.2d 338, 343. Although we are not bound by Sixth Circuit authority, it is persuasive, particularly in light of the fact that the federal constitution and speedy trial statute provide similar protections to those guaranteed by the Ohio constitution and statute. See State v. O'Brien (1987), 34 Ohio St.3d 7,516 N.E.2d 218 (`the same right' to a speedy trial is assured under Section 10, Article I of the Ohio Constitution and the Sixth andFourteenth Amendments to the *Page 36 
United States Constitution); see also Cook, supra (finding persuasive the approaches taken by federal appeals courts concerning the federal Speedy Trial Act).
 {¶ 109} "{¶ 10} Upon review of the foregoing authority, we are persuaded that, for purposes of Ohio's speedy trial statute, a trial commences when voir dire begins. We caution, as have many courts, that the trial court may not attempt to circumvent the spirit of the statute `by conducting voir dire within the statutory time limits and then ordering a prolonged recess with an intent to pay mere "lip service" to the Act's requirements.' Scaife, 749 F.2d at 343.
 {¶ 110} "{¶ 11} Turning to the case before us, Knight's trial began on December 4, 2002. On that date, a jury was impaneled and sworn, and both the state and Knight presented their opening statements. Knight filed his motion to dismiss on the morning of December 5, 2002, prior to the presentation of any witness testimony. Because Knight failed to file a motion for discharge prior to voir dire, his motion was untimely and his speedy trial challenge has been waived. We therefore need not reach the issue of whether the trial court properly concluded that the December 4, 2002, trial date was reasonable and that the state did not violate R.C. 2945.71."
 {¶ 111} Defendant did not move to dismiss the case *Page 37 
based upon a speedy trial violation until late in the trial, after the State rested in its case-in-chief. Because Defendant did not file his motion for discharge pursuant to R.C. 2945.73(B) prior to voir dire, when the trial commenced, his motion was untimely and his speedy trial challenge has been waived. Knight. In any event, Defendant has not provided this court in his brief with any computation of time showing that his speedy trial rights were violated in this case. On the other hand, the prosecutor's computation of the elapsed days for speedy trial purposes, which is reflected in the trial record and in his brief, demonstrates that the State brought Defendant to trial within the time required by R.C. 2945.71, et seq.
 {¶ 112} Defendant's fifth assignment of error is overruled.
SIXTH ASSIGNMENT OF ERROR
 {¶ 113} "THE TRIAL COURT ERRED IN LIMITING DEFENSE COUNSEL'S CROSS EXAMINATION OF A KEY WITNESS."
 {¶ 114} Defendant argues that the trial court erred in not allowing him to cross-examine State's witness Lionel Daniels about a matter Defendant claims was relevant to Daniels' credibility: whether Daniels was a crack cocaine user. According to Defendant, Daniels' drug use, to the *Page 38 
extent it may have affected his ability to observe matters about which he testified, is relevant to Daniels' credibility. The trial court limited Defendant's cross-examination of Daniels on the issue of his drug use to questions concerning whether Daniels was using drugs at the time the alleged robbery and burglary offenses occurred at the drive-thru.
 {¶ 115} In State v. Foust, Montgomery App. No. CA20470, 2005-Ohio-440, this court stated:
 {¶ 116} "{¶ 13} The constitutional right of cross-examination includes the right to impeach a witness's credibility. State v. Green,66 Ohio St.3d 141, 1993-Ohio-26; State v. Brewer (August 24, 1994), Montgomery App. No. 13866; Evid. R. 611(B). Unlike Federal Crim. R. 611, which generally limits cross-examination to matters raised during direct, Ohio Crim. R. 611(B) permits cross-examination on all relevant issues and matters relating to credibility. Weissenberger, Ohio Evidence 2005 Courtroom Manual, at p. 245-246. Possible bias, prejudice, pecuniary interest in the litigation or motive to misrepresent facts, are matters that may affect credibility. Evid. R. 616(A); State v. Ferguson (1983),5 Ohio St.3d 160, 450 N.E.2d 265. The denial of full and effective cross-examination of any witness who identifies Defendant as the perpetrator of the offense, is the denial of the *Page 39 
fundamental constitutional right of confrontation essential to a fair trial. State v. Hannah (1978), 54 Ohio St.2d 84, 374 N.E.2d 1359;Brewer, supra.
 {¶ 117} "{¶ 14} On the other hand, trial courts have wide latitude in imposing reasonable limits on the scope of cross-examination based upon concerns about harassment, prejudice, confusion of the issues, the witness's safety, or repetitive, marginally relevant interrogation.Delaware v. Van Arsdall (1986), 475 U.S. 673, 106 S.Ct. 1431,89 L.Ed.2d 674. It is within the trial court's broad discretion to determine whether testimony is relevant, and to balance its potential probative value against the danger of unfair prejudice. In re Fugate (2000), Darke App. No. 1512. We will not interfere with the trial court's decision in those matters absent an abuse of discretion. Id. An abuse of discretion means more than a mere error of law or an error in judgment. It implies an arbitrary, unreasonable, unconscionable attitude on the part of the trial court. Id."
 {¶ 118} Evid. R. 608(B) provides:
 {¶ 119} "Specific instances of conduct[.] Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in *Page 40 
Evid. R. 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified."
 {¶ 120} The trial court properly determined that Daniels' drug use was relevant to his credibility only if he was using drugs at the time the offenses about which he testified occurred. Evidence of intoxication of a witness at the very time of the matter about which he testifies is relevant on the issue of credibility of that witness's testimony on that matter. Johnson v. Knipp (1973), 36 Ohio App.2d 218. Here, the trial court allowed Defendant to cross-examine Daniels about whether he was using crack cocaine or was high on crack cocaine at the time the offenses at the drive-thru occurred, whether Daniels bought any crack cocaine on that day, or whether he made any arrangements to do so. The trial court did not allow Defendant's general question about whether Daniels was a crack cocaine user, which was not limited to the specific time frame during which these offenses *Page 41 
occurred.
 {¶ 121} Under those circumstances, the limits the trial court placed on Defendant's cross-examination of Daniels regarding his drug use were reasonable and not an abuse of discretion.
 {¶ 122} Defendant's sixth assignment of error is overruled.
SEVENTH ASSIGNMENT OF ERROR
 {¶ 123} "THE TRIAL COURT ERRED IN FAILING TO SUPPRESS UNRELIABLE IDENTIFICATION TESTIMONY AND UNFAIRLY LIMITED SUPPRESSION TESTIMONY."
 {¶ 124} Defendant argues that the pretrial identification procedure used by police, a one man show-up, was so impermissibly suggestive that it rendered the resulting identification unreliable and therefore inadmissible. We disagree.
 {¶ 125} In State v. Lewis (May 25, 2007), Montgomery App. No. 21592,2007-Ohio-2601, at ¶ 15-17, this court stated:
 {¶ 126} "{¶ 15} When a witness identifies a defendant prior to trial, due process requires a court to suppress evidence of the witness's prior identification upon the defendant's motion if the confrontation was unduly suggestive of the defendant's guilt to an extent that the identification *Page 42 
was unreliable as a matter of law under the totality of the circumstances. State v. Murphy, 91 Ohio St.3d 516, 534, 2001-Ohio-112.
 {¶ 127} "{¶ 16} The defendant has the initial burden to show that the identification procedure was somehow suggestive. If the defendant meets that burden, the court must then consider whether the identification, viewed under the totality of the circumstances, is sufficiently reliable to be admitted in evidence despite its suggestive character. State v.Wills (1997), 120 Ohio App.3d 320, 324. If the pretrial confrontation procedure was not unduly suggestive, any remaining issues as to its reliability go to the weight of the evidence, not its admissibility, and no further inquiry by the court into the reliability of the identification is required. Id., at 325; State v. Beddow (March 20, 1998), Montgomery App. Nos. 16197, 16198.
 {¶ 128} "{¶ 17} A one man show-up identification procedure, unlike a well-conducted lineup, is inherently suggestive. State v. Sherls
(February 22, 2002), Montgomery App. No. 18599, 2002-Ohio-939. Nevertheless, such identifications are not unduly suggestive if they are shown to have been reliable.
 {¶ 129} State v. Moody (1978), 55 Ohio St.2d 64; *Page 43 Sherls, supra. We have repeatedly held that one man show-ups which occur shortly after the crime are not per se improper, State v. Click (May 9, 1989), Montgomery App. No. 11074, and that prompt on-the-scene show-ups tend to insure the accuracy of identification, involve a minimum intrusion, and support the prompt release of persons not identified.State v. Gilreath (June 19, 1992), Greene App. No. 91CA35. Accord:State v. Madison (1980), 64 Ohio St.2d 322, 332. Factors to be considered in evaluating their reliability include the prior opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. Moody, supra; Sherls, supra."
 {¶ 130} A review of this record supports a conclusion that Daniels' identification of Defendant was not unreliable. Officer Shaw did not say or do anything that suggested to Daniels that Defendant was the person who committed these crimes. Daniels had ample opportunity to view Defendant as they were in close physical proximity when they physically struggled with each other. While Daniels indicated that he wears glasses, he also testified that he needs them only for *Page 44 
reading. Furthermore, Daniels testified that he recognized Defendant, not by name, but by sight. Although we agree with Defendant that Daniels' ability to see has a direct bearing on his ability to accurately identify Defendant, on these facts Daniels' ability to see was not an issue.
 {¶ 131} Furthermore, Daniels provided a description of the suspect to the police, and within just five to ten minutes after being dispatched to the scene, Officer Shaw observed Defendant, who matched the description, two blocks away from the crime scene. When Officer Shaw asked Defendant if he could talk to him, Defendant immediately blurted out that he did not do it, and that the guy who did had run East on Third Street. Defendant was detained and returned to the crime scene just twelve minutes after Officer Shaw was dispatched on Daniels' 911 call. Daniels immediately and positively identified Defendant as the perpetrator.
 {¶ 132} Based upon this evidence, we conclude that Daniels' identification of Defendant was reliable. No abuse of discretion by the trial court has been demonstrated.
 {¶ 133} Defendant's seventh assignment of error is overruled.
EIGHTH ASSIGNMENT OF ERROR
 {¶ 134} "THE TRIAL COURT ERRED IN FAILING TO PROVIDE *Page 45 
APPELLANT WITH SUBSTITUTE COUNSEL AT SENTENCING, THEREBY DEPRIVING HIM OF HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL."
 {¶ 135} Defense counsel informed the trial court at the sentencing hearing that after Defendant was found guilty by the jury of robbery and burglary, Defendant refused to speak with his court-appointed counsel any further regarding sentencing issues, and Defendant indicated that he would handle things by himself. Counsel indicated to the court that he was interpreting Defendant's statements and conduct to mean that Defendant did not want counsel to do anything further, and respecting Defendant's wishes, counsel had nothing to say. Prior to sentencing Defendant, the trial court allowed Defendant to say anything he wanted. Defendant now argues in this assignment of error that the trial court should have dismissed his court appointed trial counsel and substituted new counsel for the sentencing proceeding.
 {¶ 136} In State v. Coleman, Montgomery App. No. 19862,2004-Ohio-1305, at ¶ 24, we discussed the law governing these types of claims:
 {¶ 137} "An indigent defendant has no right to have a particular attorney of his own choosing represent him. He is entitled to competent representation by the attorney the court appoints for him. Therefore, in order to demonstrate the good *Page 46 
cause necessary to warrant removing court appointed counsel and substituting new counsel, defendant must show a breakdown in the attorney-client relationship of such magnitude as to jeopardize defendant's Sixth Amendment right to effective assistance of counsel.State v. Coleman (1988), 37 Ohio St.3d 286, 292; State v. Murphy,91 Ohio St.3d 516, 523, 2001-Ohio-112."
 {¶ 138} Disagreement between the attorney and client over trial tactics and strategy does not warrant a substitution of counsel.State v. Glasure (1999), 132 Ohio App.3d 227. Moreover, mere hostility, tension, and personal conflicts between attorney and client do not constitute a total breakdown in communication if those problems do not interfere with the preparation and presentation of a defense. State v.Gorden, 149 Ohio App.3d 237, 241, 2002-Ohio-2761.
 {¶ 139} The decision whether or not to remove court appointed counsel and allow substitution of new counsel is addressed to the sound discretion of the trial court, and its decision will not be reversed on appeal absent an abuse of discretion. Murphy, supra. An abuse of discretion means more than a mere error of law or an error in judgment. It implies an arbitrary, unreasonable, unconscionable attitude on the part of the court. State v. Adams (1980), 62 Ohio St.2d 151.
 {¶ 140} The record of the sentencing hearing demonstrates that Defendant was very upset over being found guilty of robbery and burglary and he blamed his attorney's *Page 47 
poor performance for his convictions. The trial court stated that Defendant's counsel was a very competent lawyer and did as good a job of representing Defendant as any other lawyer could have, given the evidence. The court pointed out that just because a person loses a jury trial does not mean his attorney did a bad job. At no time before or during sentencing did Defendant ever request the trial court to appoint new counsel to represent him at sentencing.
 {¶ 141} Under those circumstances, no abuse of discretion on the part of the trial court in failing to appoint new counsel for Defendant has been demonstrated.
 {¶ 142} Defendant's eighth assignment of error is overruled.
NINTH ASSIGNMENT OF ERROR
 {¶ 143} "THE TRIAL COURT IMPOSED RESTITUTION IN A SPECULATIVE AMOUNT."
 {¶ 144} Defendant argues that the trial court erred in ordering restitution in the amount of two hundred and seventy five dollars because the record fails to contain competent, credible evidence supporting that order of restitution to a reasonable degree of certainty.
 {¶ 145} The trial court ordered Defendant to pay restitution to the victim in the amount of two hundred and *Page 48 
seventy-five dollars. Defendant failed to object to the court's order of restitution, and accordingly he has waived all but plain error.State v. Summers, Montgomery App. No. 21465, 2006-Ohio-3199. Plain error does not exist unless it can be said that, but for the error, the outcome of the trial clearly would have been different. State v.Long (1978), 53 Ohio St.2d 91.
 {¶ 146} R.C. 2929.18(A)(1) authorizes the trial court to impose financial sanctions as part of its sentence for felony offenses, including restitution in an amount based upon the victim's economic loss. The Court must determine the specific amount of restitution to be paid. "If the court imposes restitution, the court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, provided that the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense."Id.
 {¶ 147} For due process reasons, the amount of restitution must bear a reasonable relationship to the loss suffered, and there must be competent, credible evidence in *Page 49 
the record to support the trial court's order of restitution to a reasonable degree of certainty. Summers. The amount of restitution requested should, if necessary, be substantiated through documentary or testimonial evidence. Id.
 {¶ 148} At Defendant's sentencing hearing the trial court ordered Defendant to pay restitution in the amount of two hundred and seventy-five dollars. The trial court never explained how it arrived at that amount of restitution. The record suggests that the sum may have been provided to the probation department by the victim. The trial court is authorized to base the amount of restitution on an amount recommended by the victim. R.C. 2929.18(A)(1).
 {¶ 149} The owner of the drive-thru, Daniel Morah, concluded that six hundred dollars had been taken from the drive-thru based upon a printout of sales receipts for that day. Morah also testified, however, that he does not know how much cash was taken, and he admitted he was just guessing that there were hundreds and fifties in the cash register drawer.
 {¶ 150} Lionel Daniels testified that he does not know how much money was missing from the cash register, but his best estimate or guess was five hundred dollars. Daniels also testified that the amount of money in the cash register could have been four hundred dollars, maybe more, maybe less. *Page 50 
 {¶ 151} The amount of money that was taken from the drive-thru was never established with certainty. The amounts testified about at trial were simply estimates or best guesses. Moreover, the trial court's restitution order in the amount of two hundred and seventy-five dollars bears no relationship to any of the sums mentioned as missing. Under these circumstances, we conclude that the trial court's order of restitution in the amount of two hundred and seventy-five dollars is not supported by competent, credible evidence in this record showing a direct and proximate relationship to the actual loss suffered to a reasonable degree of certainty. Therefore, the trial court abused its discretion in ordering restitution in that amount. State v.Williams (1986), 34 Ohio App.3d 33; Summers.
 {¶ 152} Defendant's ninth assignment of error is sustained. Accordingly, that part of the trial court's judgment ordering that restitution be paid to the victim is reversed and vacated. The judgment of the trial court is affirmed in all other respects.
WOLFF, P.J. And DONOVAN, J., concur.
Copies mailed to: *Page 51 
Elizabeth A. Ellis, Esq. Ben Swift, Esq. on. Stephen A. Wolaver *Page 1