[Cite as *State v. Hilton*, 2020-Ohio-4590.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2019-CA-70 |
| | : | |
| v. | : | Trial Court Case No. 2019-CRB-691 |
| | : | |
| ASHTON HILTON | : | (Criminal Appeal from |
| | : | Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 25th day of September, 2020.

. . . . . . . . . . .

DAVID M. MORRISON, Atty. Reg. No. 0087487, Xenia City Prosecutor's Office, 101 North Detroit Street, Xenia, Ohio 45385
          Attorney for Plaintiff-Appellee

JAMES S. ARMSTRONG, Atty. Reg. No. 0020638, P.O. Box 20368, Dayton, Ohio 45420
          Attorney for Defendant-Appellant

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1}  Ashton Hilton was convicted of petty theft in the Xenia Municipal Court, a misdemeanor of the first degree in violation of R.C. 2913.02(A)(1), and was ordered to pay restitution to Melissa Caserta in the amount of $2,035.  On appeal, he challenges the order of restitution.  We hereby affirm the judgment of the municipal court.

{¶ 2} Hilton was charged by way of complaint on May 17, 2019, and he pled no contest on September 9, 2019.  At his plea hearing, defense counsel stated that Hilton pled no contest to the theft charge "with a stipulation and waiver and * * * ask[ed] that there be a hearing set for restitution."  The court advised Hilton that if he pled no contest, he was not admitting wrongdoing but was admitting the facts set forth in the citation and report, which the court would review, and if the court found that the facts set forth the elements of the offense, it would find him guilty.  The court further advised Hilton that defense counsel indicated a willingness to stipulate that there were sufficient circumstances upon which the court could make a finding of guilt, and that the court would likely make that finding; Hilton indicated that he understood.  The court advised Hilton that defense counsel had indicated her willingness to waive reading the factual bases for the charges into the record, and Hilton indicated his agreement.  Hilton further signed a withdrawal of his jury demand.  After accepting Hilton's plea, the court scheduled a restitution hearing.

{¶ 3} At the September 24, 2019 restitution hearing, Caserta testified that she and Hilton had agreed to be roommates, and she began moving her belongings into a home that Hilton was renting.  She stated that she paid Hilton her half of the rent for March 2019, but then told him on March 13, 2019 that she could not move in and that she would to have to start moving her stuff back out; a few days later, Hilton got an eviction notice.

{¶ 4} Caserta stated that she was thereafter unable to gain access to the home despite multiple attempts to do so. She stated that, on March 20, 2019, she entered the home through an unlocked window, and "almost all of [her] stuff that was there was gone." Caserta contacted the police. She testified that her dishes, silverware, pots and pans, microwave, coffeepot, spices, bath towels, yarn, and an air conditioner were missing. Caserta also testified that she learned that Hilton was "selling this stuff on Facebook," including her grandmother's silver cutlery set, for which the box alone was worth two hundred dollars.

{¶ 5} Caserta identified Court's Exhibit I as a list she made of the items she had moved into Hilton's home and was thereafter unable to retrieve. She stated that the corresponding dollar amounts were determined by locating "the same thing or something identical at a store," "or whatever it would cost [her] to replace it." There were also some items for which she had receipts.

{¶ 6} On cross-examination, Caserta testified that she met Hilton on Facebook. She testified that, after she paid her share of the March rent, Hilton told her he needed money to pay the gas bill, and she gave him an additional $30. Caserta testified that when she attempted to contact Hilton to retrieve her belongings, he would say that he was not home, that he was leaving, or propose another day, "it was just one thing after another." She stated that she was unable "to get access to the inside of the house because he kept locking the storm door and saying he wasn't home." Caserta testified that she observed two Facebook posts by Hilton to sell a roaster and silverware that belonged to her, and that there was another post that said Hilton had "a lot of stuff" to sell, "PM [private message] me for pics."

{¶ 7} At the conclusion of the hearing, defense counsel stated that Hilton did not dispute "that there were items that were posted on Facebook" or "that there was money that exchanged hands here." Defense counsel characterized the arrangement between Hilton and Caserta as "an oral agreement for a roommate." Hilton's position was that when he moved out when he was evicted, he left all of the remainder of Caserta's items at the house when he moved out, and he did not know what had happened to them, "as is typical in an eviction type situation." Defense counsel suggested that any dispute Caserta had about the items "would be a potential civil action between the two of them for some sort of a breach of oral contract." Finally, defense counsel noted that Hilton had pled no contest to theft, was willing to accept the consequences, and understood that "some restitution" would be expected of him.

{¶ 8} Hilton was sentenced on October 2, 2019. At the sentencing hearing, the court stated that it was ordering restitution in the amount of $2.035, which was "the amount listed in Melissa Caserta's original police report witness statement." The court also imposed a fine of $250 and sentenced Hilton to 180 days in jail, giving him credit for four days and suspending the remaining days on the condition that he have no similar violations within five years and successfully complete a term of probation not to exceed two years." The court noted that it "found everything that Ms. Caserta said at that * * * restitution hearing to be truthful."

{¶ 9} The court's order regarding restitution stated that the court had listened to the Caserta's testimony and reviewed Court's Exhibit I and the list of items attached to Caserta's March 20, 2019 witness statement. A copy of page two of the witness statement was filed with the court's order; the 17 items listed thereon totaled $2,035.

Court's Exhibit I also lists multiple items, including a "Silver set, service for 12, from the victim's grandmother was listed for $20 on [F]acebook – it is genuine silver in its original box with velvet lining; it's worth thousands of dollars."

{¶ 10} Hilton asserts two assignments of error on appeal, which we will consider together:

> THE COURT ABUSED ITS DISCRETION IN DETERMINING THE AMOUNT OF RESTITUTION.

> THE TRIAL COURT ERRED IN IMPOSING RESTITUTION IN AN AMOUNT WHICH EXCEEDED THE STATUTORY AMOUNT OF THE PETTY THEFT OFFENSE FOR WHICH APPELLANT WAS CHARGED AND CONVICTED.

{¶ 11} R.C. 2929.28 specifies the types of financial sanctions a trial court may impose in misdemeanor cases, including restitution. The statute states in pertinent part:

> * * * [T]he court imposing a sentence upon an offender for a misdemeanor, including a minor misdemeanor, may sentence the offender to any financial sanction or combination of financial sanctions authorized under this section. If the court in its discretion imposes one or more financial sanctions, the financial sanctions that may be imposed pursuant to this section include, but are not limited to, the following:

> (1) Unless the misdemeanor offense is a minor misdemeanor or could be disposed of by the traffic violations bureau serving the court under Traffic Rule 13, restitution by the offender to the victim of the offender's crime or any survivor of the victim, in an amount based on the victim's

economic loss. * * *

If the court imposes restitution, the court shall determine the amount of restitution to be paid by the offender. If the court imposes restitution, the court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, provided that the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense. If the court decides to impose restitution, the court shall hold an evidentiary hearing on restitution if the offender, victim, or survivor disputes the amount of restitution. If the court holds an evidentiary hearing, at the hearing the victim or survivor has the burden to prove by a preponderance of the evidence the amount of restitution sought from the offender.

R.C. 2929.28(A)(1).

{¶ 12} As this Court has previously noted:

"R.C. 2929.28(A)(1) grants broad discretion to the trial court to 'base the amount of restitution it orders' on new information presented at the restitution hearing, which can be from the victim, the offender, a presentence investigation report, estimates, receipts, or 'any other information.'" *State v. Olson*, 2d Dist. Montgomery No. 25452, 2013-Ohio-4403, ¶ 8. In turn, "we generally review a trial court's order of restitution under an abuse of discretion standard[.]" *State v. Wilson*, 2d Dist.

Montgomery No. 26488, 2015-Ohio-3167, ¶ 11.

"A trial court abuses its discretion when it orders restitution that does not bear a reasonable relationship to the actual financial loss suffered." *Id.*, citing *State v. Johnson*, 2d Dist. Montgomery No. 24288, 2012-Ohio-01230, ¶ 11. In addition, a court abuses its discretion if the award of restitution is not supported by competent, credible evidence in the record from which the court can discern the amount of restitution to a reasonable degree of certainty. (Citations omitted.) *Olson* at ¶ 33.

"The evidence to support a restitution order can take the form of either documentary evidence or testimony." (Citations omitted.) *State v. Jones*, 10th Dist. Franklin No. 14AP-80, 2014-Ohio-3740, ¶ 23. Moreover, "[t]he trial court is authorized to base the amount of restitution on an amount recommended by the victim." *State v. Pillow*, 2d Dist. Greene No. 07CA095, 2008-Ohio-6046, ¶ 148; R.C. 2929.28(A)(1).

*State v. Williams*, 2d Dist. Montgomery No. 27072, 2017-Ohio-125, ¶13-15. In *Williams,* we held that the trial court had not abused its discretion when it ordered the defendant to pay restitution in the amount of $5,250 for damage to a fence following her conviction for reckless operation of a vehicle.

{¶ 13} As noted by the 6th District in *State v. Wright*:

The Supreme Court of Ohio has established that a trial court can order any amount of restitution, "so long as it does not exceed the amount of economic loss suffered as a direct and proximate result of the commission of the offense." *State v. Lalain*, 136 Ohio St.3d 248, 2013-Ohio-

3093, 994 N.E.2d 423, ¶ 3.

A trial court's restitution determination in a theft case is not restricted to a value that corresponds to the level on which the offense was predicated. *State v. Scurlock*, 6th Dist. Lucas No. L-15-1200, 2017-Ohio-1219, ¶ 51. As a result, a restitution figure is not required to correlate to the same value classifying the degree of the theft offense. Rather, it should reflect the economic loss the victim sustained due to the offender's actions. *Lalain* at ¶ 27.

Accordingly, although appellant pled guilty to a lesser offense of petty theft, pursuant to a negotiated plea agreement, the voluntary plea deal did not operate so as to restrict the trial court in determining the amount of restitution.

*Wright,* 6th Dist. Lucas L-17-1242, 2018-Ohio-2599, ¶ 13-15 (affirming restitution order in the amount of $29,549.84 on a petty theft conviction).

{¶ 14} As noted above, Hilton stipulated to the items listed in Caserta's witness statement, the list of items was filed with the court's restitution order, and the items totaled $2,035. The trial court's award of restitution was supported by competent, credible evidence in the record from which the court could have discerned the amount of restitution to a reasonable degree of certainty, and we find no abuse of discretion. Hilton's assignments of error are accordingly overruled.

{¶ 15} The judgment of the trial court is affirmed.

. . . . . . . . . . . .

FROELICH, J. and HALL, J., concur.


Copies sent to:

David M. Morrison
James S. Armstrong
Hon. Hon. Ronald C. Lewis