[Cite as *State v. Williams*, 2016-Ohio-322.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 26369 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 13-CR-1108 |
| v. | : | |
| | : | (Criminal Appeal from |
| DYLAN M. WILLIAMS | : | Common Pleas Court) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 29th day of January, 2016.

. . . . . . . . . .

MATHIAS H. HECK, JR., by CARLEY J. INGRAM, Atty. Reg. No. 0020084, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45402
    Attorney for Plaintiff-Appellee

BROCK A. SCHOENLEIN, Atty. Reg. No. 0084707, 371 West First Street, Dayton, Ohio 45402
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

FAIN, J.

{¶ 1} Defendant-appellant Dylan Williams appeals from his conviction and

sentence for two counts of Rape and one count of Gross Sexual Imposition. Williams contends that the trial court erred by excluding relevant testimony and allowing impermissible hearsay. He contends that his conviction was tainted by ineffective assistance of counsel. Williams also contends that his convictions are against the manifest weight of the evidence and that the trial court erred in overruling his Crim. R. 29 motion to dismiss all counts. The State contends that the trial court properly applied Evid. R. 804(B)(3) to exclude statements made by a deceased witness, and Evid. R. 803(4) by allowing statements from medical professionals regarding the victim's statements made as part of the diagnosis and treatment process. The State argues that any evidence regarding the defendant's sexual orientation is irrelevant, and the court properly excluded it. The State contends that defense counsel's performance was competent.

{¶ 2} We conclude that the trial court properly applied the applicable evidentiary rules by excluding the evidence regarding Williams's sexual orientation, by excluding the statement of the deceased witness, and admitting the victim's hearsay statements made to the doctor and social worker. We also conclude that the convictions are not against the manifest weight of the evidence, that the court properly overruled the Crim. R. 29 motion, and that defense counsel was not ineffective. Therefore, the judgment of the trial court is Affirmed.

## I. The Course of Proceedings

{¶ 3} Williams was indicted on two counts of Rape of a child under the age of 10, a felony of the first degree, in violation of R.C. 2907.02(A)(1)(b), and one count of Gross Sexual Imposition of a child under the age of 13, a felony of the third degree, in violation

of R.C. 2907.05(A)(4).

{¶ 4} Prior to trial, motions in limine were filed by both parties, seeking a ruling on the admissibility of hearsay statements made by a deceased person, William R., pursuant to Evid. R. 804(A)(4) and Evid. R. 804(B)(3), as part of the defense strategy to present evidence of R. as an alternative suspect. Specifically, Williams sought to introduce a tape-recorded statement of R. in response to an accusation of abusing the victim and letting Williams take the fall for it, in which R. stated, "you got lucky, you can't prove anything because you didn't hit record." In a written order, the trial court concluded that the hearsay statement of R. was not admissible, because the "tape recorded statement is so utterly ambiguous as to lack relevance under Ohio Evidence Rule 402. Any arguable relevance of the tape recorded statement is certainly outweighed by the danger of unfair prejudice, confusion of the issues and misleading the jury and thus must be excluded per Ohio Evidence Rule 403(A)." Dkt. #50.

{¶ 5} The trial court conducted an in camera hearing, interviewing four persons who knew R., and had heard his statement, to determine whether the testimony of these witnesses, offered to corroborate the trustworthiness of R.'s statements, was also inadmissible. In a written order, the trial court excluded the proffered testimony, and stated:

> [A]fter conducting the voir dire, the Court finds the testimony of the four proffered witnesses, to the extent that it is credible, utterly irrelevant. Not only is there no **corroborating evidence** supporting the trustworthiness of any alleged statement, the Court specifically finds as a matter of fact that Mr. [R.] never made any statements against interest to

any of these four witnesses. Indeed the **only** time Mr. [R.] is alleged to have spoken regarding the charges pending against Defendant was on the aforementioned tape excluded from evidence for the reasons discussed above and elsewhere.

* * *

To the extent Defendant is attempting to establish an "alternative suspect" theory, (1) "exclusion of a criminal defendant's proffered evidence for lack of corroboration does not deprive a defendant of the right to present a complete defense," [*State v.*] *Swann*, [119 Ohio St.3d 552,] 2008-Ohio-4837[, 895 N.E.2d 821] at syllabus, and (2) this case, where both Mr. [R.] and Defendant are known to the victim, is not a case of mistaken identity where a defendant presents evidence that it was someone else, not he, who committed the offense. See for example, *State v. Gillispie*, 2012-Ohio-1656 (2d Dist. Montgomery [No. 24456]). In fact the victim steadfastly maintains that Mr. [R.] **physically** abused him and Defendant **sexually** abused him. The credibility of the victim's allegations against Defendant is for the jury to decide, but there is absolutely no indication that the victim is "mistaken" in who he claims sexually abused him. Thus, an alternative theory is simply inappropriate here.

Thus, the proposed testimony of the four witnesses is **EXCLUDED** for its lack of relevance under Evid. R. 402; danger of unfair prejudice, confusion of the issues, and misleading the jury under Evid. R. 403; and utter failure to comport with the hearsay exception of Evid. R. 804(B)(3)

regarding statements against interest. Dkt. #57.

{¶ 6} During the trial, the court reiterated its position on the inadmissibility of any testimony supporting an alternative suspect when the defense called two of the witnesses who were interviewed by the court in relation to the motion in limine. When defense counsel informed the court of his intention to call as witnesses, Williams's stepmother, Lisa, and Williams's girlfriend, Taylor, the trial court again prohibited any testimony that might lead the jury to consider R. as an alternative suspect. Trial Transcript at pg. 310. During the trial, the defense did not proffer any potential question or answer to create a record of any testimony that was excluded.

{¶ 7} A jury found Williams guilty on all three counts. Williams was sentenced to serve a term of fifteen years to life for both of the Rape convictions, and 60 months on the conviction for Gross Sexual Imposition. The trial court ordered Williams to serve the two sentences for Rape consecutively, and the sentence for Gross Sexual Imposition was to be served concurrently with the two Rape sentences. A supplemental termination entry was filed in the format of a form wherein findings for consecutive sentences were listed and certain lines were hand-checked to indicate application to the case.

{¶ 8} From his conviction and sentence, Williams appeals.

## II. Victim Treated for PTSD After Living in Abusive Household

{¶ 9} In 2009, Williams was living in the household of the victim, B.C., the victim's older sister, K.C., the victim's mother, J.L.E., the mother's boyfriend, William R. (known as Billy), and Williams's father, Gary. Williams is Billy's nephew, as Gary is Billy's half-

brother. B.C. considered Williams to be his cousin. B.C.'s biological father is deceased.

{¶ 10} Both the victim's mother and the mother's boyfriend, Billy, were substance abusers, and neglected B.C. and K.C. When B.C. lived with his mother, Billy was physically abusive to B.C. on a regular basis, and his mother did nothing to stop the abuse. Sometime after Williams left the victim's household, Billy died of a drug overdose, and was therefore unavailable as a witness at the time of trial. Approximately three years later, J.L.E. was convicted of several felonies, and the custody of B.C. and K.C. was changed to their maternal aunt, Angel. Angel is the paternal aunt of Williams. Angel is J.L.E.'s half-sister, and Billy is her half-brother, although J.L.E. and Billy are unrelated.

{¶ 11} When B.C. moved in with his aunt in April, 2012, he was ten years old. At this time he told his aunt that he had been physically abused by Billy, and sexually abused by Williams three years earlier when they lived together. Angel contacted CSB, and took B.C. to Care House for an evaluation. B.C. was interviewed at Care House, and an edited version of the video recording of the interview was played for the jury. Although no one testified to authenticate the video, defense counsel did not object to its admissibility. In the video, B.C. identifies Williams as the person who sexually assaulted him. Initially, he stated that it only occurred once then changed his response to say it happened twice. In both instances, he stated the event took place in the basement of the house, where Williams's bedroom was located. B.C. stated that he played video games with Williams on his PlayStation in the basement, and that when he was assaulted, Williams locked the basement door with a lock that had a key, but he could not find the key. Williams's father, Gary, testified that the basement door did not have a lock, and that there was no other door in the basement to separate the bedroom area. In his videotaped interview with the

detective, Williams states that he did not have a Playstation and did not play videogames with B.C. B.C. also testified at trial, providing consistent details of the sexual assaults. There was no other evidence to corroborate B.C.'s recollection of the sexual assaults, other than the statements he made to the social worker and the pediatrician.

{¶ 12} B.C. was diagnosed and treated for post-traumatic stress disorder by a licensed therapist, Anessa Gilbride. She testified that B.C. identified four different traumatic events from his past, including physical abuse, sexual abuse, a traumatic death of a close relative, and a serious medical condition based on a brain tumor which required surgery. Of all the trauma suffered, B.C. identified Williams's sexual assault as the most serious. B.C. and Gilbride met at least 19 times for therapy sessions during which she was able to discern more details of the abuse. Gilbride testified that part of the therapy was to work with him "to describe the trauma in a narrative so that he could talk about it more." Trial Transcript pg. 255. Gilbride testified that she had B.C. provide a narrative on three occasions, that his facts remained consistent and that more detail was disclosed over time. She also testified that when discussing details, B.C. was emotional, "He cried. He put his head down. He said he didn't want to talk about it," and that these type of emotional reactions are common and consistent with kids that report sexual abuse. Trial Transcript pg. 257.

{¶ 13} The medical director for the Department of Child Advocacy at Dayton Children's Hospital, Dr. Vavul-Roediger, who is board-certified in general pediatrics and child abuse pediatrics, testified regarding her physical examination of B.C., which found no signs of physical injury or rape. Dr. Vavul-Roediger testified that the child reported having a "history of ADHD." Trial Transcript pg. 386. She also testified that B.C. reported

feeling "really mean and mad" on a periodic basis whenever he had thoughts about Williams, and in response to her inquiry about "why he feels really mean, he said, quote, because of thoughts of Dylan and what he did to me." *Id.* The defense objection to this testimony on the basis of hearsay was overruled and the trial court stated that "Evid. R. 803(4) extends to statements made as long as the purpose of the statement is part of initiation, medical diagnosis, or treatment, statements made by a child identifying the perpetrator of sexual abuse may be pertinent to both diagnosis and treatment because such statements will assist medical personnel in treating the actual injury." Trial Transcript at pg. 387. Dr. Vavul-Roediger was allowed to refer to the victim's identification of Williams numerous times throughout her testimony.

{¶ 14} A video of Det. Richard Taylor interviewing Williams was played for the jury, without objection from defense counsel. Williams acknowledged living with B.C., and acknowledged that B.C. was neglected and abused by his Uncle Billy, but Williams denied any sexual assault and did not have any explanation for why B.C. would make up these allegations against him. In the detective's inquiry about B.C.'s motive for reporting abuse, he explained to Williams that over the course of his career he had interviewed thousands and he could tell when a child was making things up or telling the truth.

{¶ 15} Lisa, the spouse of Gary and step-mother of Williams, testified that she observed the living conditions of B.C. when he was living with his mother and Billy; the house was filthy, Billy and J.L.E. were often passed out from drug use, and the children were not fed because there was no food in the house. She also observed Billy physically abuse B.C. on several occasions, and also take a hammer to their dog's head and bash it in to demonstrate what he could do to B.C. Lisa also testified that she saw B.C. having

sex with his sister. An objection to this testimony was sustained, and the jury was instructed to disregard it.

{¶ 16} Taylor, the former girlfriend of Williams, and the mother of his child, also testified regarding her observations of the household when Williams and B.C. lived together, confirming that the house was dirty, the children were not fed and they were abused. She observed J.L.E. and Billy abusing drugs, and she saw Billy physically abuse B.C. on a daily basis. After Williams had moved out of the house he shared with B.C. and began living with Taylor, both B.C. and his sister had stayed with them on occasion and she observed a good relationship between Williams and B.C. This contradicts Williams's statements made during his interview with the detective that he had not seen B.C. since he moved out of the house they both shared. On direct examination, defense counsel asked Taylor if Williams had any "homosexual tendencies", and she responded, "No." Trial Transcript at page 348. The State objected to this question, and stated in a sidebar conference, "whether the Defendant is gay or not has nothing to do with whether he molested a child. Just because he enjoys little boys, doesn't mean that you're gay and if you're gay that you like little boys. Child molesters have sex with boys, girls, anything. So I think this is completely irrelevant and inappropriate." Trial Transcript at pg. 349. Defense counsel responded that the State had opened the door to this questioning by offering the videotape of the detective's interview that shows Williams denying that he is gay. *Id.* The trial court reminded counsel that he had agreed with the State to allow the video to be played to the jury, without redaction. Therefore, the trial court sustained the State's objection and ordered the answer to be stricken. *Id.* The transcript does not include a cautionary instruction to the jury to disregard the question and answer.

### III. Standard of Review

**{¶ 17}** "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." *State v. Sage*, 31 Ohio St.3d 173, 180, 510 N.E. 2d 343 (1987). Questions regarding the admissibility of hearsay statements are also reviewed on an abuse-of-discretion standard. *State v. Muttart*, 116 Ohio St.3d 5, 2007-Ohio-5267, 875 N.E.2d 944. A trial court abuses its discretion when it makes a decision that is unreasonable, arbitrary, or unconscionable. *State v. Renner*, 2d Dist. Montgomery No. 25514, 2013-Ohio-5463, ¶ 24. The Supreme Court of Ohio has defined "abuse of discretion" as an "unreasonable, arbitrary, or unconscionable use of discretion, or as a view or action that no conscientious judge could honestly have taken." *State v. Kirkland*, 140 Ohio St. 3d 73, 2014-Ohio-1966, 15 N.E. 3d 818, ¶ 67.

**{¶ 18}** } "Reviewing the denial of a Crim. R. 29 motion * * * requires an appellate court to use the same standard as is used to review a sufficiency of the evidence claim." *State v. Cokes*, 2d Dist. Montgomery No. 26223, 2015-Ohio-619, ¶ 23 (internal citation omitted). When a defendant challenges the sufficiency of the evidence, he is arguing that the State presented inadequate evidence on at least one element of the offense to sustain the verdict as a matter of law. *State v. Hawn*, 138 Ohio App.3d 449, 471, 741 N.E.2d 594 (2d Dist. 2000). " 'An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact

could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Morefield*, 2d Dist. Montgomery No. 26155, 2015-Ohio-448, ¶ 18, quoting *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 19} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a "thirteenth juror." *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Under this standard of review, the appellate court weighs the evidence in order to determine whether the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.*

{¶ 20} Ineffective assistance of counsel allegations are reviewed de novo to determine if the counsel's deficient performance prejudiced the outcome. To reverse a decision based on ineffective assistance, the record must support a finding that defense counsel's performance was deficient, and that a reasonable probability exists that, but for counsel's omissions, the resulting outcome would have been different. *State v. Jones*, 1st Dist. Hamilton No. C-130359, 2014-Ohio-3110, ¶ 27, citing *Strickland v. Washington,* 466 U.S. 668, 687, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus.

**IV. The Evidence Is Sufficient to Support the Convictions of Rape
and Gross Sexual Imposition**

{¶ 21} Williams's Second and Third Assignments of Error, state as follows:

THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S RULE 29 MOTION AS TO EACH COUNT IN THE INDICTMENT

APPELLANT'S CONVICTIONS WERE ENTERED AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE

{¶ 22} We have explained our review of whether the evidence supports a conviction as follows:

A sufficiency-of-the-evidence challenge questions whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or to sustain the verdict as a matter of law. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1992), paragraph two of the syllabus.

When a conviction is challenged as being against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State*

*v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). In a manifest-weight analysis, the credibility of the witnesses and the weight to be given to their testimony are primarily for the trier of facts to resolve. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). "Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that a substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witnesses." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *5 (Aug. 22, 1997). This court will not substitute its judgment for that of the trier of fact on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way. *State v. Bradley*, 2d Dist. Champaign No. 97-CA-03, 1997 WL 691510 (Oct. 24, 1997).

*State v. Fricke*, 2d Dist. Montgomery No. 26126, 2015-Ohio-3389, ¶¶ 37-38.

{¶ 23} The evidence presented in this case supports a finding that Williams engaged in two acts of sexual conduct with the victim, B.C., at a time when he was under the age of 10, which meets the elements of the offense of Rape as defined in R.C. 2907.02(A)(1)(b). The evidence also supports a finding that Williams had sexual contact with the victim, B.C., at a time when the victim was under the age of 13, which meets the elements of the offense of Gross Sexual Imposition, as defined in R.C. 2907.05(A)(4).

Having reviewed the record, and deferring to the jurors' decisions regarding whether and to what extent to credit the testimony of the witnesses, we conclude that Williams's conviction is not against the manifest weight of the evidence, and that the evidence is sufficient to support the convictions.

{¶ 24} Therefore, the Second and Third Assignments of Error are overruled.

## V.   The Court Did Not Prevent Williams from Presenting Evidence of Alternative Sources of Abuse or an Alternative Suspect

{¶ 25}   In his First and Fourth Assignments of Error, Williams alleges as follows:

THE TRIAL COURT ERRED IN EXCLUDING RELEVANT TESTIMONY CONCERNING ALTERNATIVE SOURCES OF ABUSE

THE TRIAL COURT ERRED IN PRECLUDING APPELLANT FROM ARGUING AN ALTERNATIVE SUSPECT THEORY OF THE CASE

{¶ 26}   The record supports that Williams attempted to present a defense that his uncle, and the boyfriend of B.C.'s mother, Billy, should be considered by the jury as an alternative suspect.   There was consistent testimony from several eyewitnesses that Billy physically abused B.C. on a regular basis when B.C. was living with his mother and Billy. However, the trial court did not allow the defense to pursue testimony from any of these witnesses to support the defense theory that Billy sexually abused B.C. The trial court's conclusion that an alternative-suspect defense was not appropriate in this case was based on the trial court's finding that this was not a case of mistaken identity.   Therefore, the trial court's evidentiary rulings which excluded this evidence were based on Evid. R. 402, which directs that irrelevant testimony is inadmissible.   While we agree that there

are no facts in the record to suggest that the victim was mistaken about the identity of Williams, we disagree that the defense of an alternative suspect is only available in cases of mistaken identity when the abuser is unknown to the victim. Evidence of an alternative suspect who is known to the victim may be relevant to cast doubt on the credibility of the victim's testimony, because of coaching from others or fabrication, memory loss, confusion, immaturity, retaliation, malice, fear, or other motivations or explanations for the lack of credibility or reliability. A jury could reasonably conclude that a victim's identification of his abuser is not just mistaken but actually untruthful because of his fear of the alternative suspect.

{¶ 27} In the case before us, the trial court did allow numerous witnesses to testify that Billy was physically abusive to B.C. on a regular basis, from which the jury could reasonably infer that B.C. lived in fear of him. Our review of the record establishes that sufficient evidence of Billy's abuse was presented to allow the jury to make an inference that Billy could have been the perpetrator of all abuse suffered by B.C., if they found that B.C. was not credible when he identified Williams as the person who sexually assaulted him. "The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact." *State v. DeHass,* 10 Ohio St. 2d 230, 227 N.E. 2d 212 (1967). To present Billy as an alternative suspect, the defense had to convince the jury that B.C.'s testimony was not credible. Williams was not prevented from cross-examining B.C. or from arguing during closing statements that B.C.'s testimony should not be viewed as credible. Williams has not established that if more evidence was admitted regarding Billy's statements or conduct that the jury would likely have reached a different conclusion. The court's exclusion of additional evidence regarding alternative sources of abuse and/or to

support the alternative suspect defense was not prejudicial. Therefore, Williams has not established that the trial court abused its discretion by limiting evidence of an alternative suspect.

{¶ 28} We also conclude that the trial court did not abuse its discretion in excluding statements made by Billy R., prior to his death, when confronted by family members about his abusive behavior. Specifically, Williams sought to introduce a statement of Billy, which was tape-recorded by Williams's step-mother, Lisa. In the recording, Lisa accuses Billy of abusing B.C. and letting Williams take the fall for it, and Billy responds, "you got lucky, you can't prove anything because you didn't hit record."   The trial court did not admit the hearsay statement, finding it too ambiguous to be of any probative value. The defense sought its admission pursuant to Evid. R. 804(B)(3), as a statement against interest. The rule provides:

A statement that was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true. A statement tending to expose the declarant to criminal liability, whether offered to exculpate or inculpate the accused, is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

{¶ 29} We agree that this recorded statement was inadmissible as it was too equivocal to satisfy the requirement that it was made against the utterer's penal interest.

The trial court properly held a pre-trial in-camera hearing, and considered the potential testimony of four witnesses, which confirmed that the statement was in fact made by Billy, but none of them presented sufficient corroborating evidence to consider the statement as any admission of criminal liability for a sexual assault. The trial court did not abuse its discretion by refusing to admit the proffered evidence.

**{¶ 30}** The First and Fourth Assignments of Error are overruled.

## VI. The Trial Court Did Not Abuse its Discretion in Finding that the Risk of Unfair Prejudice Arising from the Admission of Evidence of Williams's Sexual Orientation Outweighed its Probative Value

**{¶ 31}** In his fifth Assignment of Error, Williams alleges as follows:

THE TRIAL COURT ERRED IN PRECLUDING APPELLANT FROM ELICITING TESTIMONY FROM APPELLANT'S CHILD'S MOTHER AS TO HER OBSERVATIONS OF HIS SEXUAL PREFERENCE

**{¶ 32}** The question asked by defense counsel regarding the witness's observation of Williams's sexual tendencies was excluded by the trial court on the basis of relevancy. Evid. R. 402 provides that relevant evidence is generally admissible. Evid. R. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid. R. 403 directs the court to exclude relevant evidence if its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or of misleading the jury."

**{¶ 33}** In the case before us, we agree that the issue of Williams's sexual

orientation may have been relevant. Since no expert testified to substantiate the known behavior of sex offenders and the correlation of their sexual orientation, it was within the province of the jury to determine whether the fact of his sexual orientation made the factual allegation of the sexual assault more or less probable. However, we conclude that the trial court did not abuse its discretion in finding that the probative value of that evidence is substantially outweighed by the danger of unfair prejudice that could arise by its admission. Accordingly, we find no error in the court's ruling that the question and answer regarding sexual orientation should be stricken.

{¶ 34} Therefore, the Fifth Assignment of Error is overruled.

## VII. Statements Made by the Victim to Medical Professionals Were Admissible

{¶ 35} In his Sixth Assignment of Error, Williams alleges as follows:

DR. VAVUL-ROEDIGER'S RENDITIONS OF THE MINOR'S ACCUSATIONS VIOLATED CONFRONTATION PRECLUSIONS, AND THUS THE TRIAL COURT ERRED IN ALLOWING THE SAME

{¶ 36} Williams argues that the trial court erred by allowing the admission of hearsay statements made by B.C. to the social worker and the pediatrician that identified Williams as the perpetrator of the sexual assault. "Statements made for purposes of medical diagnosis or treatment are admissible under Evid.R. 803(4) as exceptions to the rule against hearsay." *State v. McNew*, 2d Dist. Montgomery No. 22902, 2009-Ohio-5531, ¶ 17, citing S*tate v. Dever*, 64 Ohio St.3d 401, 596 N.E.2d 436 (1992); *State v. Chappell*, 97 Ohio App.3d 515, 646 N.E.2d 1191 (8th Dist. 1994). The hearsay exception allows the admission of statements made not only to licensed physicians, but also to psychologists

and social workers, so long as the function of the person to whom the statement is made was diagnosis or treatment. *Id.*, citing *State v. Sheppard,* 164 Ohio App.3d 372, 2005-Ohio-6065, 842 N.E.2d 561 (5th Dist.); *Chappell* at 531, 646 N.E.2d 1191.

{¶ 37} In the case before us, the State asserts that the questions the pediatrician and the social worker asked B.C. about possible sexual abuse were for the purpose of diagnosis and/or treatment. The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. *State v. Sage,* 31 Ohio St.3d 173, 180, 510 N.E. 2d 343 (1987). We have held the admission of hearsay is harmless error where the declarant was also a witness and examined regarding matters identical to those contained in the hearsay statements. *State v. Smith,* 2d Dist. Montgomery No. 20828, 2006-Ohio-45, ¶16. In the present case, the declarant, B.C., was a witness at trial, and his testimony was consistent with the statements he previously made to the doctor and the social worker that Williams was the person who sexually assaulted him. B.C. was very familiar with his cousin, Williams, and no evidence suggests that he was confused or mistaken about the identity of his abuser. Both the doctor and the social worker referred to statements made by B.C. to explain their interview process to evaluate his need for treatment, and to conduct therapy sessions. Both the doctor and the therapist testified that when Williams was discussed, B.C.'s reaction and behavior was consistent with victims of sexual abuse, which led to an appropriate treatment plan. Therefore, the doctor and social worker's testimony was properly allowed under the medical-diagnosis-or-treatment exception to the rule against hearsay testimony. The trial court did not abuse its discretion in allowing the testimony of the doctor and social worker to be admitted.

{¶ 38} We further conclude that the admission of the doctor's testimony did not rise

to the level of a Confrontation Clause violation. In *State v. Dever,* 64 Ohio St.3d 401, 596 N.E.2d 436 (1992), the Supreme Court of Ohio applied the analysis in *White v. Illinois,* 502 U.S. 346, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992), concluding that the defendant's right of confrontation was not infringed when hearsay statements from medical professionals are admitted for the purpose of diagnosis or treatment of a young child who is the victim of a sexual assault. "The admission into evidence of a hearsay statement pursuant to a firmly rooted hearsay exception does not violate a defendant's right of confrontation." The Court in *Dever* clarified "that a trial court does not abuse its discretion when it admits a child declarant's statements made for the purpose of medical diagnosis or treatment pursuant to Evid.R. 803(4)." *Id.* at 412. We acknowledge that a Confrontation Clause issue may bar the admission of evidence that would otherwise be allowed pursuant to an exception to the hearsay rule, under specific circumstances where the hearsay evidence is inherently unreliable. *State v. Issa*, 93 Ohio St. 3d 49, 752 N.E. 2d 904 (2001). However, the facts surrounding the victim's identification of Williams were not inherently unreliable; he initially told his Aunt when she became his guardian, after he was removed from an abusive household, his facts remained consistent, and no evidence suggested a motive for fabrication. Furthermore, the victim in this case testified, and was subject to cross-examination, which satisfied Williams's right of confrontation. The trial court did not abuse its discretion in allowing the doctor and the social worker to testify to statements made by their patient as part of the diagnosis and treatment process.

{¶ 39} Therefore, the Sixth Assignment of Error is overruled

### VIII. Defense Counsel Was Not Ineffective

{¶ 40} In his Seventh and Eighth Assignments of Error, Williams alleges that his

counsel was ineffective. Specifically, he asserts as follows:

TRIAL COUNSEL WAS INEFFECTIVE IN BOTH FAILING TO OBJECT TO ANESSA GILBRIDE TESTIFYING AS AN EXPERT, AND IN FAILING TO MOVE FOR A MISTRIAL UPON GILBRIDE AND DR. VAVUL-ROEDIGER'S COMMENTARY ON THE CHILD'S VERACITY.

TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO OBJECT TO THE MINOR'S VIDEOTAPED CARE HOUSE INTERVIEW BEING VIEWED BY THE JURY

{¶ 41} To establish a claim for ineffective assistance of counsel, the defendant has the burden of demonstrating that: 1) the performance of defense counsel was seriously flawed and deficient; and 2) there is a reasonable probability that the result of the defendant's trial or legal proceeding would have been different had defense counsel provided proper representation. *State v. LeGrant*, 2d Dist. Miami No. 2013-CA-44, 2014-Ohio-5803, ¶ 26, citing *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Therefore, to reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness, and that counsel's deficiencies were serious enough to create a reasonable probability that, but for the deficiencies, the result of the trial would have been different.

{¶ 42} As discussed above, we have concluded that the testimony of the social worker and the pediatrician who identified Williams as the person named by the victim as his sexual abuser was properly admissible. Williams further objects to the testimony of the social worker and the pediatrician on the assumption that their testimony corroborated

the veracity or credibility of the victim's identification of Williams as the person who committed the offenses. We agree that a witness is generally not allowed to testify regarding the veracity of another witness, as questions of credibility are solely within the province of the jury. *State v. Stowers*, 81 Ohio St.3d 260, 261, 690 N.E.2d 881 (1998); *State v. Boston,* 46 Ohio St. 3d 108, 545 N.E. 2d 1220 (1989). However, it is permissible for the expert witness to convey his or her opinion that the child has in fact been sexually abused, based on the expert's professional opinion that the child's conduct is consistent with children who have been abused. *State v. Rosas,* 2d Dist. Montgomery No. 22424, 2009-Ohio-1404, ¶ 42; *State v. Britta*, 11th Dist. Lake No. 2009-L-017, 2010-Ohio-971, ¶ 67-68. "Only statements directly supporting the veracity of a child witness are prohibited." *State v. Cashin*, 10th Dist. Franklin No. 09AP-367, 2009-Ohio-6419, ¶ 20.

**{¶ 43}** Our review of the record does not reveal that either of the medical professionals directly stated that B.C. was being truthful or that his accusations should be considered credible. The statements made by the social worker and the pediatrician were limited to opinions that B.C.'s behavior was consistent with children who had been abused, but neither of them specifically testified that in their opinion B.C. was telling the truth. The credibility of the victim's identification of Williams as the offender was left for the jury to decide based on the victim's live testimony and his videotaped interview.

**{¶ 44}** We also conclude that counsel was not ineffective when he did not object to allowing the social worker to testify as an expert. As identified by Evid. R. 702(C), a witness is qualified to testify as an expert when specialized knowledge, training and experience provide the basis for relevant evidence that would assist the trier of fact in understanding the evidence or a fact at issue that is beyond common experience. *State*

*v. Muhleka,* 2d Dist. Montgomery No. 19827, 2004-Ohio-1822, ¶ 76. The social worker who testified was licensed by the State of Ohio to provide therapy, and had significant experience with providing therapy to victims of abuse. Under the circumstances of this case, we find no grounds for a mistrial based on the qualifications of the professional witnesses and the admissibility of their testimony.

{¶ 45} We also conclude that counsel was not ineffective when he did not object to allowing the jury to view the videotape of the victim's interview at Care House. At trial, the victim's live testimony was consistent with the videotape, and the defense was given the opportunity to cross-examine the victim before the jury, which allowed questions to challenge the witness's credibility. It was a matter of trial strategy to allow the jury to observe the differences in the live and taped testimony to help them judge credibility, as some details were different. Evid. R. 613(B) specifically allows impeachment by admission of prior inconsistent statements. It is significant that in the video the child first stated that the sexual assault only happened once, then he changed his statement to say it happened again. A defense strategy to allow the jury to compare the victim's two versions of the events could have benefited the defense if the jury had decided to convict on one count of Rape instead of two counts. "Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance, and a defendant, in order to overcome the presumption that counsel is competent, must show that counsel's decisions were 'not trial strategies prompted by reasonable professional judgment.' " *State v. Few*, 2d Dist. Montgomery No. 25161, 2012-Ohio-5407, ¶ 10, quoting *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "Hindsight is not permitted to distort the assessment of what was reasonable in

light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel." *Id.* at ¶ 11, quoting *State v. Nabors,* 2d Dist. Montgomery No. 24582, 2012-Ohio-4757, ¶ 17. Even if unsuccessful, strategic decisions will not constitute ineffective assistance of counsel. *Id.*, citing *State v. Carter,* 72 Ohio St.3d 545, 558, 651 N.E.2d 965 (1995). Generally, the decision regarding which defense to pursue at trial is a matter of trial strategy, and trial strategy decisions are not a basis of a finding of ineffective assistance of counsel. *State v. Moss*, 2d Dist. Montgomery No. 22496, 2008-Ohio-6969, ¶ 35, citing S*tate v. Murphy,* 91 Ohio St.3d 516, 524, 747 N.E.2d 765 (2001); *State v. Dixon,* 101 Ohio St.3d 328, 2004-Ohio-1585, 805 N.E.2d 1042, ¶ 52

**{¶ 46}** Williams has not established that his counsel's performance was seriously flawed or deficient or that there is a reasonable probability that the verdict would have been different had defense counsel objected to the admissibility of the videotaped interview, or the qualifications of the social worker to testify as an expert. We view defense counsel's decision not to object to the videotape as a strategic decision that did not constitute ineffective assistance of counsel.

**{¶ 47}** The Seventh and Eighth Assignments of Error are overruled.

## IX. Conclusion

**{¶ 48}** All assignments of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . .

HALL and WELBAUM, JJ., concur.


Copies mailed to:

Mathias H. Heck, Jr.
Carley J. Ingram
Brock A. Schoenlein
Hon. Steven K. Dankof