[Cite as *State v. Craver*, 2020-Ohio-5407.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28748 |
| | : | |
| v. | : | Trial Court Case No. 2019-CR-1611 |
| | : | |
| ANGELO M. CRAVER | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

# O P I N I O N

Rendered on the 25th day of November, 2020.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by LISA M. LIGHT, Atty. Reg. No. 0097348, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

CLYDE BENNETT, II, Atty. Reg. No. 0059910, 119 East Court Street, Cincinnati, Ohio 45202
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Defendant-appellant Angelo M. Craver appeals from his conviction for one count of failure to comply with the order or signal of a police officer, in violation of R.C. 2921.331(B) and (C)(5), a felony of the third degree. Craver filed a timely notice of appeal on March 11, 2020.

{¶ 2} The incident which led to Craver's conviction occurred on May 13, 2019, between 2:30 p.m. and 3:00 p.m., when Dayton Police Detective Sam Humphrey was conducting surveillance in an unmarked cruiser near West Riverview Avenue and Kumler Avenue in Dayton. Humphrey testified that he observed a gray Dodge Challenger being driven along St. Agnes Avenue and began to follow the vehicle. At some point, the driver of the Challenger stopped the vehicle in front of a residence on St. Agnes Avenue, exited the vehicle, and went inside the residence. Detective Humphrey testified that the individual driving the vehicle was a male with "a large puff of hair in the back." Humphrey also testified that he was using binoculars to conduct surveillance on the day in question.

{¶ 3} Detective Humphrey testified that, approximately 30 minutes later, he observed the Challenger being driven back onto Kumler Avenue heading toward West Riverview Avenue, where Detective Humphrey was parked. Through his binoculars, Humphrey was able to observe the face of the driver of the Challenger and identified him as defendant-appellant Craver. Detective Humphrey testified that he was familiar with Craver and had had approximately five to ten interactions with him between 2017 and the date of this incident. Humphrey specifically noted one interaction in which he helped put a dental partial (fake teeth) back into Craver's mouth while Craver was being arrested. Humphrey testified that, based upon his familiarity with Craver, he knew that Craver did

not have a valid driver's license.[1]

{¶ 4} While conducting additional surveillance on Kumler Avenue, Detective Humphrey observed Craver exit the Challenger again and enter the rear driver's side of a white SUV that was parked nearby. Humphrey testified that Craver appeared to be holding something small in his hand, although he could not identify what it was. Craver remained in the SUV for a short period of time before exiting the vehicle and reentering the Challenger. At that point, an unidentified heavy-set male who "had been on the scene the whole time" walked over to the driver's side window of the Challenger and began speaking to Craver, who was sitting inside the vehicle. Detective Humphrey testified that, based upon his observations, he believed that he had just witnessed a drug transaction. Thereafter, Humphrey contacted Dayton Police Officers Orick and Nagy, who were nearby in a marked police cruiser, and requested that they initiate a traffic stop of the Challenger driven by Craver because he did not possess a valid driver's license.

{¶ 5} Officers Nagy and Orick, riding together, pulled onto Kumler Avenue, parked their cruiser "nose to nose" with the Challenger driven by Craver, and activated the cruiser's overhead lights. Officer Nagy testified that as soon as the overhead lights were activated, Craver put the Challenger in reverse and accelerated rapidly backward, striking the vehicle behind him. Nagy testified that the vehicle hit by Craver moved approximately four feet. Craver then accelerated forward and hit the unidentified heavy-set male who had been speaking with Craver at the driver's side window before Officers Orick and Nagy arrived. The heavy-set male rolled onto the hood of the Challenger, his

---

[1] The police later discovered that the Challenger had been rented from Enterprise Rental, but it had not been rented under Craver's name.

pants fell down, and he rolled off the hood onto the ground as Craver drove away. As he was driving away, Craver struck a silver SUV parked on the other side of the street, then drove through a nearby vacant lot where a house had been torn down.

{¶ 6} While Officer Orick was driving the cruiser in an attempt to intercept Craver, Officer Nagy reported to dispatch about the incidents that had just occurred and the direction in which Craver was traveling. Officer Nagy testified that Officer Orick did not follow Craver through the vacant lot. Orick attempted to track Craver on the main roads but was given incorrect directions by another officer and was not able to locate him. Nagy testified that they had called for a medic to help the man who had been hit by Craver, but they cancelled the call when they returned to the scene of the incident and discovered that the man had fled the area. The vehicle Craver had struck when he backed up was also gone.

{¶ 7} Dayton Police Detective Tyler Orndorff testified that he had been listening to the radio traffic between Detective Humphrey and Officers Orick and Nagy as they were attempting to stop the Challenger driven by Craver. Orndorff was traveling in an unmarked vehicle toward the scene of the incident in order to assist the other officers in apprehending Craver. While he was waiting for a green light at the intersection of Broadway Street and West Riverview Avenue, Detective Orndorff observed the Challenger driven by Craver driving at a high rate of speed toward the detective's vehicle. In addition to speeding, Craver was weaving in and out of traffic. Orndorff testified that, because there was a vehicle in front of him, he could not move his vehicle so as to avoid being hit by Craver's vehicle. When he arrived at the intersection where Orndorff was located, Craver braked the Challenger hard and turned south onto Broadway, thereby

avoiding a collision with Orndorff's vehicle and eluding the police.

{¶ 8} On November 15, 2019, Craver was indicted for one count of failure to comply with the order or signal of a police officer. At his arraignment on November 19, 2019, Craver pled not guilty to the charged offense. In January 2020, Craver filed a waivers of his right to a speedy trial and to a jury trial.

{¶ 9} A bench trial was held on February 10, 2020, and Craver was found guilty of failure to comply with the order or signal of a police officer. On February 28, 2020, Craver was sentenced to 24 months in prison and his driver's license was suspended for ten years.

{¶ 10} It is from this judgment that Craver now appeals.

{¶ 11} Craver's first assignment of error is as follows:

MR. CRAVER'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLES I, SECTIONS 1, 10, AND 16 OF THE [OHIO] CONSTITUTION.

{¶ 12} In his first assignment, Craver contends that his conviction for failure to comply with the order or signal of a police officer was against the manifest weight of the evidence. We note, however, that although he challenges his conviction as being against the manifest weight of the evidence, Craver also argues that his conviction was not supported by sufficient evidence. Specifically, Craver argues that there was insufficient evidence that the vehicle driven by Craver was the proximate cause of serious physical harm to a person or property or that Craver's operation of the vehicle caused a

substantial risk of serious physical harm to a person or property. We will therefore address both arguments.

{¶ 13} This Court has previously noted:

When a conviction is challenged as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). In a manifest-weight analysis, the credibility of the witnesses and the weight to be given to their testimony are primarily for the trier of facts to resolve. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). "Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that a substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witnesses." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 477684, *5 (Aug. 22, 1997). This court will not substitute its judgment for that of the trier of fact on the issue of witness credibility unless it is patently apparent that the trier of fact lost

its way. *State v. Bradley,* 2d Dist. Champaign No. 97-CA-03, 1997 WL 691510 (Oct. 24, 1997). * * *

*State v. Nelson*, 2d Dist. Greene No. 2014-CA-7, 2015-Ohio-113, ¶ 29.

{¶ 14} Regarding the sufficiency of the evidence, this Court has previously stated: "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). When reviewing whether the State has presented sufficient evidence to support a conviction, "the relevant inquiry is whether any rational finder of fact, after viewing the evidence in the light most favorable to the State, could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997), citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). A guilty verdict will not be disturbed on appeal unless, "reasonable minds could not reach the conclusion reached by the trier-of-fact." *Id.*

*State v. Hill*, 2d Dist. Montgomery No. 28577, 2020-Ohio-4235, ¶ 13, citing *State v. Wilson*, 2d Dist. Montgomery No. 27001, 2016-Ohio-7329, ¶ 6.

{¶ 15} As previously stated, Craver was found guilty of failing to comply with the order of a police officer in violation of R.C. 2921.331(B), which provides, "[n]o person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop."

{¶ 16} Additionally, Craver was found guilty of R.C. 2921.331(C)(5)(a)(ii) which provides, "[a] violation of division (B) of this section is a felony of the third degree if the jury or judge as trier of fact finds any of the following by proof beyond a reasonable doubt: (ii) [t]he operation of the motor vehicle by the offender caused a substantial risk of serious physical harm to persons or property."   "Substantial risk" is defined as "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8).

{¶ 17} As previously stated, at the close of the bench trial, Craver was found guilty of failure to comply with the order or signal of a police officer.   Specifically, the trial court stated that the testimonies of Detective Humphrey, Officer Nagy, and Detective Orndorff were credible.   Craver did not call any witnesses.   The trial court found that the evidence established that Craver was the driver of the Challenger.   The trial court also found that, after the officers had signaled him to stop, Craver created a substantial risk of serious physical harm to a person when he struck the heavy-set male standing next to his (Craver's) car, who then rolled off the hood of the Challenger and into the street.   The trial court further found that Craver created a continued substantial risk of serious physical harm when Craver attempted to elude the police by driving between two houses and across a vacant lot, avoiding paved roads.   Lastly, the trial court found that Craver created a substantial risk of physical harm to persons and/or property when he was observed driving at a substantially higher rate of speed than the posted 25 mile per hour speed limit and driving recklessly toward Detective Orndorff and other traffic at the intersection of Broadway and West Riverview in Dayton.

{¶ 18}  The evidence adduced by the State established that on May 13, 2019,

Detective Humphrey was conducting surveillance in an unmarked cruiser and observed, through binoculars, a gray Dodge Challenger being driven along St. Agnes Avenue; Humphrey began to follow the vehicle. At some point, the driver of the Challenger stopped in front of a residence on St. Agnes Avenue, exited the vehicle, and went inside the residence. Humphrey testified that individual driving the vehicle was a male with "a large puff of hair in the back."

{¶ 19} Approximately 30 minutes later, Detective Humphrey observed the Challenger being driven back onto Kumler Avenue toward West Riverview Avenue, where Humphrey was parked. Through his binoculars, Humphrey observed the face of the driver of the Challenger and identified him as Craver, with whom he was familiar from five to ten prior interactions. Humphrey specifically recalled one interaction where he helped put a dental device back in Craver's mouth that had fallen out while Craver was being arrested. Humphrey testified that, based upon his familiarity with Craver, he knew that Craver did not have a valid driver's license, even though Craver was observed driving the Challenger. Humphrey then contacted Officers Orick and Nagy, who were in a marked police cruiser, and requested that they initiate a traffic stop of Craver's vehicle.

{¶ 20} Officers Nagy and Orick pulled "nose to nose" with the Challenger driven by Craver and activated the cruiser's overhead lights. Officer Nagy testified that, as soon as the overhead lights were activated, Craver put the Challenger in reverse and accelerated rapidly backward, striking the vehicle behind him. Craver then accelerated forward and hit the heavy-set male who had been standing at Craver's driver's side window before Officers Orick and Nagy arrived. The man rolled onto the hood of the Challenger and then onto the ground as Craver drove away. Craver also struck a silver

SUV parked on the other side of the street as he was driving away, then drove through a vacant lot. Both Detective Humphrey and Officer Nagy testified that they observed Craver strike the heavy-set male with the Challenger.

{¶ 21} Officer Orick attempted to track Craver on the main roads but was unable to locate him. The officers called for a medic to help the man who had been hit by Craver, but when they returned to the scene of the incident, they discovered that the man had fled the area; the vehicle initially struck by Craver and pushed backward had also left the scene.

{¶ 22} Detective Orndorff, who had been listening to the radio traffic between Detective Humphrey and Officers Orick and Nagy, observed the Challenger as he was traveling in an unmarked vehicle toward the scene of the incident in order to assist the other officers in apprehending Craver. Orndorff observed the Challenger driven by Craver driving at a high rate of speed toward the detective's vehicle. In addition to speeding, Craver was weaving in and out of traffic. Upon arriving at the intersection where Detective Orndorff's vehicle was stopped, Craver braked the Challenger hard and turned south onto Broadway.

{¶ 23} Craver argues that, because the individual he hit had left the scene, and because the vehicle he struck and pushed four feet backward was also gone when officers arrived back at the scene, there was no indication of substantial risk of serious physical harm to person and/or property. However, the fact that the heavy-set man and the vehicle were no longer at the scene did not preclude a finding that Craver had created a substantial risk of serious physical harm to the man, to other people in the area, or to property. Craver drove the Challenger at a high rate of speed through a residential area

and into oncoming traffic, almost hitting Detective Orndorff's vehicle. *See State v. Hill*, 2d Dist. Clark Nos. 2013-CA-11, 2013-CA-12, 2014-Ohio-532, ¶ 28, ¶ 34 (defendant's reckless, high-speed flight created a substantial risk of serious physical harm to persons or property, even though, fortunately, no persons or property were harmed).   Craver's actions in striking an individual with his car and traveling at a high rate of speed through a residential neighborhood unquestionably demonstrated that he created a substantial risk of serious physical harm to persons.   Construing the evidence presented in a light most favorable to the State, as we must, a rational trier of fact could have found all of the essential elements of the crime for which Craver was found guilty to have been proven beyond a reasonable doubt.   Craver's conviction for failure to comply with the order or signal of a police officer therefore was supported by legally sufficient evidence.

{¶ 24} Having reviewed the record, we also find no merit in Craver's manifest-weight challenge.   It is well-settled that evaluating witness credibility is primarily for the trier of fact.   *State v. Benton*, 2d Dist. Miami No. 2010-CA-27, 2012-Ohio-4080, ¶ 7. Here, the trial court reasonably credited the testimony provided by the State's witnesses, applied said evidence and all reasonable inferences to the elements of the offense, and found Craver guilty of failure to comply with the order or signal of a police officer.   The evidence did not weigh heavily against conviction, and no manifest miscarriage of justice occurred.

{¶ 25} Craver's first assignment of error is overruled.

{¶ 26} Craver's second assignment of error is as follows:

> MR. CRAVER RECEIVED INEFFECTIVE ASSISTANCE OF
> COUNSEL WHEN COUNSEL FAILED TO FILE A MOTION TO

SUPPRESS IN VIOLATION OF MR. CRAVER'S SIXTH AND FOURTEENTH AMENDMENT RIGHTS UNDER THE OHIO AND UNITED STATES CONSTITUTION[S].

{¶ 27} In his second assignment, Craver argues that he was denied effective of counsel when his trial attorney failed to file a motion to suppress regarding the basis for the initial attempted traffic stop and his identification by Detective Humphrey.

{¶ 28} To reverse a conviction based on ineffective assistance of counsel, an appellant must demonstrate both that trial counsel's conduct fell below an objective standard of reasonableness and that the errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland* at 688. Deficient performance means that claimed errors were so serious that the defense attorney was not functioning as the "counsel" that the Sixth Amendment guarantees. *State v. Cook*, 65 Ohio St.3d 516, 524, 605 N.E.2d 70 (1992).

{¶ 29} "Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel." *State v. Nabors*, 2d Dist. Montgomery No. 24582, 2012-Ohio-4757, ¶ 17. "Even if unsuccessful, strategic decisions will not constitute ineffective assistance of counsel." *State v. Carter*, 72 Ohio St.3d 545, 558, 651 N.E.2d 965 (1995). Generally, the decision regarding which defense to pursue at trial is a matter of trial strategy, and trial

strategy decisions are not a basis of a finding of ineffective assistance of counsel. *State v. Moss*, 2d Dist. Montgomery No. 22496, 2008-Ohio-6969, ¶ 35, citing *State v. Murphy*, 91 Ohio St.3d 516, 524, 747 N.E.2d 765 (2001); *State v. Dixon*, 101 Ohio St.3d 328, 2004-Ohio-1585, 805 N.E.2d 1042, ¶ 52.

{¶ 30} The failure to file a suppression motion is not per se ineffective assistance of counsel. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000). Rather, trial counsel's failure to file a motion to suppress constitutes ineffective assistance only if the failure to file the motion caused prejudice because there was a reasonable probability that, had the motion to suppress been filed, it would have been granted. *State v. Wilson*, 2d Dist. Clark No. 2008-CA-445, 2009-Ohio-2744, ¶ 11; *see also State v. Nields*, 93 Ohio St.3d 6, 34, 752 N.E.2d 859 (2001).

{¶ 31} "Where the basis of an ineffective assistance of counsel claim is counsel's failure to file a motion to suppress evidence, the defendant making that claim must prove that the basis of the suggested suppression claim is meritorious." *In re D.D.*, 2d Dist. Montgomery No. 22740, 2009-Ohio-808, ¶ 3, citing *Kimmelman v. Morrison*, 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986); *State v. Pillow*, 2d Dist. Greene No. 2007-CA-95, 2008-Ohio-6046, ¶ 59.

{¶ 32} As previously stated, while conducting surveillance, Detective Humphrey observed Craver exit the Challenger and enter the rear driver's side of a white SUV parked nearby. Although he could not identify what it was, Humphrey testified that Craver appeared to be holding something small in his hand. Craver remained in the SUV for a short period of time, then exited the vehicle and reentered the Challenger. At that point, an unidentified heavy-set male walked up to the driver's side window of the

Challenger and began speaking to Craver, who was sitting inside the vehicle. Humphrey believed that he had just witnessed a drug transaction. Most importantly, however, even if Detective Humphrey had not in fact witnessed a drug transaction, he was aware that Craver did not have a valid driver's license and had been observed driving.

**{¶ 33}** The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Under *Terry,* police officers may briefly stop and/or temporarily detain individuals in order to investigate possible criminal activity if the officers have a reasonable, articulable suspicion that criminal activity may be afoot, including a minor traffic violation. *State v. Martin*, 2d Dist. Montgomery No. 20270, 2004-Ohio-2738, ¶ 10, citing *Terry*; *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 7-8. The existence of reasonable suspicion is determined by evaluating the totality of the circumstances and considering those circumstances "through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Heard*, 2d Dist. Montgomery No. 19323, 2003-Ohio-1047, ¶ 14, quoting *State v. Andrews*, 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271 (1991).

**{¶ 34}** " 'Reasonable, articulable suspicion' is a 'less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence.' " *State v. Fears*, 8th Dist. Cuyahoga No. 94997, 2011-Ohio-930, ¶ 5, citing *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000); *State v. Scott*, 2d Dist. Clark No. 2013-CA-104, 2014-Ohio-4963, ¶ 12.

**{¶ 35}** When he asked Officers Nagy and Orick to initiate a traffic stop of the vehicle that Craver was driving, Detective Humphrey knew that Craver did not possess a

valid driver's license. *See State v. Sears*, 2d Dist. Montgomery No. 20849, 2005-Ohio-3880, ¶ 26 (when officer stopped the vehicle, he knew that the registered owner did not have a valid driver's license and believed the person driving the vehicle might be its owner; these circumstances justified stopping the vehicle to investigate whether the owner was driving the vehicle without a valid license). Here, Detective Humphrey was aware, based upon his numerous past interactions with Craver, that Craver did not possess a valid driver's license. Therefore, Humphrey had probable cause to order Officers Nagy and Orick to effectuate a traffic stop of the Challenger driven by Craver.

{¶ 36} Accordingly, the decision to initiate a traffic stop of the vehicle Craver was driving without a valid license was lawful, and there is no reasonable probability that a motion to suppress based upon the initial attempt to initiate a traffic stop would have been granted. Accordingly, there is no basis to conclude that a motion to suppress would have been successful and altered the outcome of this case.

{¶ 37} Finally, Craver contends that his identification at trial could have been an issue requiring the filing of a motion to suppress. However, we see no basis to conclude that a motion to suppress Humphrey's identification of Craver would have been successful. Detective Humphrey testified that, approximately 30 minutes after he observed the Challenger in front of a residence on St. Agnes Avenue, he observed the Challenger driving on Kumler Avenue toward West Riverview Avenue, where Detective Humphrey was parked. Through his binoculars, Detective Humphrey was able to observe the face of the driver of the Challenger and identified him as Craver, with whom he was familiar from numerous prior interactions, including one that involved putting a dental device back in Craver's mouth while Craver was being arrested. Clearly,

Detective Humphrey was familiar with Craver, and there was nothing obstructing his view of Craver on the day in question.    There were no negative weather conditions, and it was mid-afternoon and therefore light outside.    Accordingly, we conclude that a motion to suppress based upon Detective Humphrey's identification of Craver would have been unsuccessful.    Therefore, trial counsel was not ineffective in failing to file a motion to suppress with respect to the initial attempted stop of the vehicle Craver was driving or Detective Humphrey's identification of Craver as the driver of the Challenger.

{¶ 38} Craver's second assignment of error is overruled.

{¶ 39} Craver's first and second assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

FROELICH, J. and WELBAUM, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Lisa M. Light
Clyde Bennett, II
Hon. Gerald Parker